ALFRED H. SMITH et al., Respondents, v. HENRY CLEWS, Impleaded, etc., Appellant.

Plaintiffs were dealers in diamonds. M. was also a dealer, doing business by procuring diamonds from larger dealers to sell to his customers. Plaintiffs, on being informed by M. that he had a customer for a pair of diamond ear-knobs, delivered a pair to him, taking a receipt which stated that they were received by M. on approval to show to his customers, to be returned to plaintiffs " on demand." M. sold the diamonds to defendant C. who purchased in good faith, supposing M. to be the owner. C. had previously purchased from M. two pairs of diamond

earrings obtained in the same way from plaintiffs and paid for by C In an action to recover possession of the ear knobs, *held*, that plaintiffs conferred on M the power to sell, and C. acquired a good title as against them, that the agreement in the receipt to return the diamonds on demand meant a return in case they were not sold before a demand. *Smith* v *Clews* (33 Hun, 501) reversed

(Argued March 14, 1887 , decided April 19, 1887.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 12, 1884, which affirmed a judgment in favor of plaintiffs entered upon a verdict and affirmed an order denying a motion for a new trial. (Reported below, 33 Hun, 501.)

The nature of the action and the material facts are stated in the opinion.

*Albert A. Abbott* for appellant. Authority to one to act for another need not be conferred in words. It may be inferred from the course of business and employment, and from the fact that similar transactions of the assumed agent have been acquiesced in, or repeatedly recognized, by the principal, as done by his authority. (*People* v. *Bk. of N. Am.*, 75 N. Y 54, 59.) Where personal property is delivered to another, thereby clothing him with the *indicia* of title, or permitting him truthfully to assert that he has it, and upon such assertion to dispose of it to innocent persons for value, the parties so delivering must lose, as against those who have paid their money in good faith relying upon the acts of the first owners. (*Parker* v *Baxter*, 86 N. Y 586, 595, 596; *Harkness* v. *Russell*, 118 U. S. 663; *Fitzgerald* v. *Fuller*, 19 Hun, 180 )

*Charles H. Woodbury* for respondents It is possible for one to deliver a chattel to a person with liberty to show it to a third person without thereby authorizing a sale to such third person. Parties may stipulate in whom shall be the title of personal property (*Hurd* v *Cook*, 75 N Y 454, 458; *Brown* v *Moss,* 70 id. 465, 472, 473.) The legal relation

between the parties was that of bailor and bailee. (*Mallory v. Willis*, 4 Comst. 85 ; *Foster* v. *Pettibone*, 3 Seld. 433 ; *Spraights* v. *Hawley*, 39 N. Y. 441 ; *Ash* v. *Putnam*, 1 Hill, 302 ; *Paddon* v. *Taylor*, 44 N. Y. 371, 376 ; *People* v *B'k of N. A.*, 75 id. 547, 561, 562 ; *Coggill* v *Hartford & N. H. R. R. Co.*, 3 Gray, 549 ; *Deshon* v *Bigelow*, 8 id. 159, 160,; *Harkness* v. *Russell*, 118 U S 663.) To constitute an estoppel as against the true owner he must have done something more than entrust the possession to another, and the purchaser must have known what that something was and relied upon it before he can say he was induced by the true owner to part with his money by the acts or appearance of acts of the true owner. (*People* v. *B'k of N. A.*, 75 N. Y. 547, 560, 562.) Even a bailee who is to pay a fixed price for the article, in case he does not return it, does not acquire the title, but is liable therefor to the owner in trover. (*Person* v. *Civer*, 29 How. Pr. 432.) Nor can he convey a good title to a *bona fide* purchaser for value as against the owner. (*Westcott* v. *Thompson*, 18 N. Y. 363 ; *Boon* v. *Moss*, 70 id 465, 472, 473 ; *Ballard* v. *Burgett*, 40 id. 314 ; *Austin* v. *Dye*, 46 id. 500 ; *Comer* v. *Cunningham*, 77 id. 391 ; *Barnard* v. *Campbell*, 55 id. 456 ; *Puffer* v. *Reeve*, 35 Hun, 480 ; *Fitz gerald* v. *Fuller*, 19 id. 180 ; *Fleeman* v. *McKean*, 25 Barb. 474 ; Benjamin on Sales, [4 Am. ed.] § 595 ; *Knowlson* v. *Sprong*, 10 Week. Dig. 81 ; *Bulkley* v. *Matthews*, 12 id. 229 ; *J. & M. M'f'g Co.* v. *Burr*, 16 id. 415.) The fact that the defendant was not in possession of the diamonds at the time when the demand was made upon him, does not relieve him from liability. (*Barnett* v. *Selling*, 70 N. Y. 493 ; *Nichols* v. *Michaels*, 23 id. 264, 268 ; *Jones* v. *Dowle*, 9 M. & W. 19 ; *Pease* v. *Smith*, 61 N. Y. 477 ; *Boyce* v. *Brockaway*, 31 id. 490 , *McGoldrick* v. *Willits*, 52 id. 612, 620 ; *Spraights* v. *Hawley*, 39 id 441.) Where there is no assumption of ownership or other act inconsistent with the title of the true owner, there is no conversion. (*Whitney* v. *Slauson*, 30 Barb. 276 ; *Andrews* v. *Shattuck*, 32 id. 396 ; *Pease* v. *Smith*, 61 N Y. 477 , *Osborn* v. *Schenck*, 83 id. 201.)

Pᴇᴄᴋʜᴀᴍ, J. This is an action under the Code to obtain the delivery of personal property alleged to belong to plaintiffs and to be wrongfully withheld by defendant.

The plaintiffs had a verdict which was affirmed at General Term and the defendant has appealed here. The plaintiffs claimed to be the owners of what they called a pair of diamond ear-knobs, of the value of $1,400, which came into the possession of defendant, as shown by the evidence, in the following manner·

Elijah Miers was a dealer in diamonds in New York. His business was to procure diamonds from the larger dealers and sell them to his customers. Before the 13th of January, 1879, he had procured from an authorized agent of the plaintiffs, a pair of diamond earrings which on that day he had sold to the defendant, for $300, and had received the check of defendant, payable to his order in payment therefor.

Before the 23d day of January, 1879, Miers had procured another pair of earrings from plaintiffs' said agent, and sold them on that day to defendant for $450, receiving in payment the first pair of earrings and the check of defendant, for the balance of $150.

Miers had paid to plaintiffs' agent, the price of these diamonds after the sale to defendant. The defendant had purchased them in good faith from Miers assuming him to be the owner. He intended the first pair as a present for his wife, but when shown to her she preferred a more expensive pair, and hence the second purchase.

These also proved unacceptable, and it was some time after their purchase by defendant before the diamonds in question were presented to him for purchase, he having in the mean time kept the second pair, and upon the purchase of the diamonds in question of the same man Miers, he gave back the second pair and paid $650 in addition, thus making up $1,100, the purchase-price of these last diamonds.

There is no question of the *bona fides* of this series of purchases by the defendant. The evidence is uncontradicted as to the manner in which Miers obtained the last diamonds from the plaintiffs.

They had delivered them to Plumb, the diamond broker, who had delivered the other diamonds to Miers. One of the plaintiffs was asked how it happened that he delivered these diamonds to Plumb, and he testified that he could not say whether it was at Miers' request or not, but that Miers had called on him before he delivered them to Plumb and had said to him that he had a customer for a pair of diamond ear-knobs, and although the plaintiff could not say that he told Miers that he would send him the diamonds through Plumb, yet he says he stated to Plumb that he would do so, and he did do so, and he authorized Plumb to deliver the diamonds to Miers and that that is the way Miers got them. The witness also said he knew Miers had the diamonds in his possession imme-diately, that they were taken from the plaintiffs' office and delivered to Miers by Plumb; they were delivered to Plumb on the 12th of April, and by him to Miers on that day. When Plumb delivered them to Miers he took from him a receipt in this form :

"NEW YORK, April 12, 1879

"Received from Alfred H. Smith & Co. by their repre-sentative, B W Plumb, a pair of single stone diamond ear-rings $10\frac{1}{8}$ carats, of the value of fourteen hundred dollars, on approval, to show to my customers, said knobs to be returned to said A. H. Smith & Co. on demand

"E. MIERS."

Having thus become possessed of the diamonds, Miers, as has been stated, sold them to defendant, and the question is, did he get a good title as against the plaintiffs?

Taking the undisputed evidence and reading this receipt in the light thereof, we cannot resist the conclusion that the plaintiffs conferred upon Miers the power to sell these diamonds and of course to give a good title, and therefore the court should have directed a verdict for the defendant.

The plaintiffs were dealers in diamonds and they knew Miers and that he was engaged in the business of a diamond dealer — a seller of the stones to whomever he chose.

They had on two former occasions intrusted, through their

agent, diamonds to Miers, who had sold them and accounted for the proceeds of the sale without any fault being found so far as appears on account of any lack of authority to sell.

They were informed by Miers on this particular occasion, that he had a customer for a pair of diamond earrings and these diamonds were then intrusted to Miers by the plaintiffs, through their agent, Plumb Upon taking them Miers gave the receipt spoken of. Now, upon these facts, what other meaning can be attached to that receipt than that Miers had power to take these diamonds, show them to his customer, and if approved of by the customer sell them to him? The fact that Miers agreed to return them to plaintiffs on demand must be construed with reference to the obvious purpose for which the diamonds were intrusted to him, viz, that of a sale, and, so construed, the plain meaning is that if not already sold, the plaintiffs had the right to demand a return of the diamonds any time and Miers would then be bound to return them. The information given to plaintiffs, by Miers, that he (Miers) had a customer for a pair of diamond ear-knobs, is susceptible of no other interpretation than that he had a customer, who wanted to buy a pair. Under such circumstances what could a dealer in diamonds mean by intrusting them to another dealer who had a customer who wanted to buy them, and who came to this dealer for the purpose of being supplied by him with diamonds of a kind which his customer wanted to buy?

Enlightened by these facts, the interpretation of the receipt signed by Miers is an easy matter. It can mean nothing else than an authority to sell the stones to the customer if they met his approval, and if not actually sold before demand made, they should be returned to the plaintiffs upon such demand.

This conclusion as to what was the actual authority given to Miers, does not in the least affect the propriety of the decisions cited by the counsel for the respondents and, in the opinion of the court at General Term, to the effect that one intrusted simply with the possession of personal property, with no power to sell or pass title, cannot give title to the property even to a *bona fide* purchaser for value. The question here

is simply, what was the authority with which the man Miers was clothed, and upon the undisputed evidence in the case, we hold it was an authority to sell.

The judgment of the General Term and of the Circuit should be reversed and a new trial ordered, costs to abide event.

All concur.

Judgment reversed.