upon a bond to be given to procure a liquor tax certificate issued under a state law (United States v. Owens [D. C.] 100 Fed. 70; Ambrosini v. United States, 187 U. S. 1, 23 Sup. Ct. 1, 47 L. Ed. 49), or to tax an administration bond (McNally v. Field [C. C.] 119 Fed. 445), or to tax a notarial certificate (Prather v. Pritchard, 26 Ind. 65; Stirneman v. Smith, 100 Fed. 600, 40 C. C. A. 581), or to tax the bond of a notary public (Warwick v. Bettman [C. C.] 102 Fed. 127; Id., 108 Fed. 46, 47 C. C. A. 185).

It is immaterial to the principle involved that the tax required by the act is small; for the right to exact a moderate tax implies the right to exact a destructive one. Once the power is conceded, there is no limitation to the extent to which it may be exercised. Neither is it material that the tax is not required to be paid by the state official—in this instance by the clerk of this court, whose certificate is sought; for, though he is not required to supply and affix the stamp, its requirement is made a condition to, and consequently an embargo upon, the exercise of his official duties. He is entitled to discharge his duties free from the interference of the federal government, else he becomes absolutely subject to its control; and, upon this situation being brought about, the independence of the states is at an end. In Sackett v. McCaffrey, 131 Fed. 219, 65 C. C. A. 205, the Circuit Court of Appeals for the Ninth Circuit held that the War Revenue Act of 1898 provided that a "certificate of any description required by law, not otherwise specified in this act," was subject to the tax therein provided, related to and required the taxation of a notarial certificate of acknowledgment, largely upon the theory that the tax was not required to be paid by the state official; but that decision was rendered upon the question of the admissibility of the instrument to which the certificate related in evidence in a federal court, as to which Congress may properly legislate; and while, therefore, the result reached may be justified, the reason assigned therefor is not controlling when, as here, a matter of evidence in the federal courts is not involved.

These considerations lead me to the conclusion that the provisions of the statute requiring that a certificate of the clerk of a state court be stamped are unconstitutional and void. The motion is therefore granted.

Motion granted.

---

### SIEGEL v. UNION ASSUR. SOCIETY OF LONDON.

(City Court of New York, Trial Term.   May, 1915.)

INSURANCE ☞425—AUTOMOBILE INSURANCE—LIABILITY OF INSURER—"THEFT, ROBBERY, OR PILFERAGE."

An owner of an automobile, who placed it in a garage of a third person under an agreement that the third person should pay him a specified sum therefor, payment to be made after the third person had sold the car, parted with the automobile with the expectancy of receiving the specified sum from the third person, within Sales Act (Consol. Laws, c. 41), § 100, as added by Laws 1911, c. 571, providing that, when goods are delivered to the buyer on sale or return, the property passes to the buyer on delivery, and the act of the third person in disposing of the automobile on the same day for

a less sum and converting the proceeds to his own use is not a "theft, rob·
bery, or pilferage," within a policy insuring the automobile against loss
by theft, robbery, or pilferage.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1129, 1135,
1143; Dec. Dig. ☞425.]

Action by Harry A. Siegel against the Union Assurance Society of
London. Judgment for defendant.

Foster & Cunningham, of New York City, for plaintiff.

Butler, Brown, Wyckoff & Campbell, of New York City, for de-
fendant.

FINELITE, J. The plaintiff was the owner of an automobile which
was insured by the defendant for the sum of $1,500 under a policy of
insurance issued by the defendant to the plaintiff on the 24th day of
May, 1914, against loss or damage to said automobile by theft, robbery,
or pilferage by any person or persons other than those in the employ-
ment, service, or household of the plaintiff. The automobile was
valued at the sum of $1,500. Thereafter, about the 28th day of Sep-
tember, 1914, said car was placed in the garage and salesroom of R. W.
Lewis, Incorporated, in the city of New York, under instructions of
the plaintiff to his chauffeur to take said car to the garage of Lewis,
Incorporated, for the sale of the same. Thereupon an agreement was
entered into which reads as follows:

"This is to acknowledge receipt of your 1913 Hudson touring car, with the
following equipment: Two shoes, regular equipment. It is agreed and under-
stood that R. W. Lewis, Incorporated, is to sell said car and pay you the.
sum of $700 in full payment for same, said payment to be made after R. W.
Lewis, Incorporated, has sold above mentioned car. It is further agreed and
understood that there is to be no charge for storage or other charges, and
that you may end this contract and remove car at any time prior to sale with-
out notice. I am the sole owner of the above-mentioned automobile, and guar-
antee same to be free and clear from all incumbrances. These statements are
made by me for the purpose of inducing the R. W. Lewis, Incorporated, to ac-
cept my car as above mentioned.

"Date, September 28, 1914.                    R. W. Lewis, Inc.,
                                              "By A. E. Kannengieser..
                                      "H. A. Siegel.
"Witness: E. Garcel.
"Accepted: Harry Prince, 19 West Twenty-Third Street. Chelsea 5936."

Harry Prince was the chauffeur of the plaintiff, who was directed
by the plaintiff to take said car to the garage of Lewis, Incorporated.
About 5 o'clock in the afternoon of said day the plaintiff had a conver-
sation by phone with Kannengieser, the representative of R. W. Lewis,
Incorporated, notifying him to do nothing further with the car until
the plaintiff communicated with R. W. Lewis, Incorporated, which he
would do in the morning; that on the following morning, September
29, about noon, plaintiff endeavored to get into communication with
Lewis, and found that the said Lewis had the night before disposed of
the car for the sum of $400. Lewis admitted that the car was sold
about 7 o'clock in the evening of September 28, 1914, to a man whose
name is unknown, for the sum of $400. Plaintiff contends that by the

disposal of the car by Lewis without waiting the further instructions from the plaintiff, and after signing the agreement hereinabove quoted, there was a larceny or theft of the property insured under the policy issued by the defendant, for which the defendant would be held liable, because Lewis disposed of the car without returning the proceeds thereof and disobeying the conditions of the agreement aforesaid, to wit:

"And it is agreed and understood that R. W. Lewis, Incorporated, is to sell said car and pay the sum of $700 in full payment for same, said payment to be made after Lewis. Incorporated, has sold above-mentioned car."

By the said Lewis, Incorporated, disposing of said car and appropriating the money to its own use, the plaintiff contends that this in itself was a larceny or theft for which the defendant would be liable under its policy; but reference must be had to the Personal Property Law (Consol. Laws, c. 41; Laws of 1909, c. 45; Laws of 1911, c. 571) for the contract of sale on which the defendant relies, contending that thereunder no liability exists against it for the retention of the proceeds of the sale of said car by Lewis, Incorporated, under and pursuant to the contract made between the plaintiff and the said Lewis, Incorporated, for the sale of said car. Section 100 of the Sales Act of the Personal Property Law expressly recognizes the contract of "sale or return," and makes provision for it in section 100, which reads in part as follows:

"Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property and the goods is to pass to the buyer: * * * Rule 3. When goods are delivered to the buyer 'on sale or return,' or on other terms indicating an intention to make a present sale, but to give the buyer an option to return the goods instead of paying the price, the property passes to the buyer on delivery, but he may revest the property in the seller by returning or tendering the goods within the time fixed in the contract, or, if no time has been fixed, within a reasonable time."

The reasonable time in said rule refers to when the contract was to be terminated between the parties by demand made by the vendor upon the vendee, as in the case at bar. Lewis, Incorporated, had the privilege of returning the automobile to the plaintiff at any time prior and up to the time the plaintiff might make a demand upon him for the return of the same. Thereafter R. W. Lewis, Incorporated, was indebted to plaintiff in the sum of $700 for goods sold and delivered.

This section of the Personal Property Law has been passed upon in numerous cases, wherein the courts have held that they were of the opinion that it only applies to cases in which a sale has been agreed upon, subject to the test being satisfactory; in other words, the statute was intended to apply to conditional sales of goods. The Legislature did not intend to attempt to force a sale where the goods have merely been delivered on trial. Goods are often thus delivered with a view to negotiating if the test proves satisfactory. That is a reasonable inference to be drawn from the evidence with respect to the delivery and installation of the property in question. Fox v. Proctor, 160 App. Div. 712, 145 N. Y. Supp. 709. To quote from House v. Beak, 141 Ill. 290, 30 N. E. 1065, 33 Am. St. Rep. 307:

"A contract 'on sale and return' is an agreement, by which goods are de-livered by a wholesale dealer to a retail dealer to be paid for at a certain rate, if sold again by the latter, and if not sold to be returned. Story on the Law of Sales, § 249. If the vendee returns the goods, the contract of sale is at an end; if he does not, the sale becomes absolute, and the price of the goods may be recovered in an action for goods sold and delivered. If no time is specified within which the return is to be made, the law implies that they are to be re-turned within a reasonable time. What is a reasonable time will depend upon the circumstances of each case. Id. In such cases, the property and the goods pass to the purchaser subject to an option in him to return them within a fixed or reasonable time; the price is fixed at the time of the sale and deliv-ery of the goods; the purchaser deals with the goods as his own, disposes of them as he pleases for cash or on credit, is under no obligation to give any ac-count of his disposition of them, and is only liable to pay for them at a price fixed beforehand, without any reference to the price at which he sells them. Jameson v. Gregory, 4 Metc. (Ky.) 363; In re Linforth, 4 Sawy. 370 [Fed. Cas. No. 8,369]; Ex parte White (In re Nevill), L. R. 6 Ch. App. 397. See, also, Schlesinger v. Stratton, 9 R. I. 578; Buswell v. Bicknell, 17 Me. 344 [35 Am. Dec. 262]; Smith v. Clews, 105 N. Y. 283 [11 N. E. 632, 59 Am. Rep. 502]. Benjamin on Sales (7th Ed.) § 597, at pp. 606 and 607, American note."

The reasoning underlying the foregoing authorities and underlying section 100 of our Sales of Goods Act, above quoted, is doubtless that when one passes the sole dominion over his goods to another, giving to the latter power to dispose of the same in any way he pleases, and requiring from him only that he pay, if the goods are so disposed of, a sum fixed in advance, title to such goods has for all practical purposes passed to the recipient, and thereafter, unless the recipient chooses to return the goods within the time allotted to him for such purpose, he may be held for the price of the same in an action for goods sold and delivered. The plaintiff cites a number of authorities holding to the effect that where one disposes of property belonging to another or di-verts the same from the proper channel to which it is agreed it should be devoted or applied, that in itself is larceny or theft of the property in question, but in People v. Cruger, 102 N. Y. 510, 7 N. E. 555, 55 Am. Rep. 830, where one intrusted another with a diamond pin for the purpose of obtaining a loan thereon for the owner. The recipient of the pin obtained such loan, but failed to account for the proceeds. He was indicted for larceny of the pin. The Court of Appeals held that under those circumstances there could be no larceny of the pin, Danforth, J., writing the opinion of the court, saying at page 512 of 102 N. Y., at page 556 of 7 N. E.:

"If the owner intended to part with the property for a special purpose, and the defendant used it only in the way prescribed, it could not be said to be stolen. There could have been neither a false pretense nor a felonious taking on his part. It is said, however, by the learned counsel for the respondent, that the request asked too much, because it did not take in the possible intent of the defendant, 'at the time of procuring the loan,' to appropriate the pro-ceeds to his own use. This by no means answers the exception, for if found according to the propositions of the request, it would appear that the defend-ant received the property lawfully and disposed of it according to the wish of the owner, that he not only obtained the loan, but obtained it as authorized. The request might have been amplified, but it was unambiguous, and contained a proposition good in law and to the benefit of which the defendant was en-titled. An omission to account for the proceeds of the loan could not, by rela-tion, change the voluntary act of the owner in parting with the pin into a larcenous taking by the defendant, nor sustain the allegation upon which the

indictment stood, that the defendant 'feloniously did steal, take, and carry away' the property in question. There may have been a breach of trust and even fraudulent conversion of the proceeds of the loan, but that does not constitute the offense charged."

Under said agreement between the plaintiff and R. W. Lewis, Incorporated, the plaintiff parted with the automobile with the expectancy of receiving the sum of $700 from said R. W. Lewis, Incorporated. All dominion over said car had been transferred to R. W. Lewis, Incorporated, for the moment, and the said R. W. Lewis, Incorporated, having disposed of the automobile the same day without awaiting further instructions from the plaintiff on the following morning and appropriating the proceeds thereof to its own use and benefit, the plaintiff putting the automobile in possession of a person who has disposed of it and appropriated the proceeds, I fail to see, nor can the law hold, that the defendant under its policy is liable for a theft, larceny, or pilferage. The plaintiff failing to submit proper proof under the policy, no liability exists, and the court was justified in dismissing the complaint.

The motion for a new trial must therefore be denied, with exception to the plaintiff, and 10 days' stay and 30 days to make a case. Settle order on one day's notice.