## GREGORY v. NEWSOM. (No. 6925.)

(Court of Civil Appeals of Texas. Austin. Jan. 9, 1926.)

1. **Estoppel ⊚⇛75—Principal and agent ⊚⇛147 (2)—Mere intrusting of personal property to another insufficient to warrant assumption of authority of disposal; one dealing with agent ordinarily charged with duty of ascertaining extent of his authority.**

Mere intrusting of personal property to another is insufficient to warrant assumption that party in possession is owner or has authority of disposal, and, where property is turned over to an agent, one dealing with him is ordinarily charged with duty of ascertaining extent of his authority.

2. **Estoppel ⊚⇛75—Principal and agent ⊚⇛137 (1)—Owner, holding out another as owner or agent, estopped to deny ownership or agency against innocent third party.**

Owner of property, holding out another as owner or agent, is estopped to deny such ownership or agency as against an innocent third party, who has dealt with latter on faith of apparent ownership or agency.

3. **Appeal and error ⊚⇛927(7)—Reviewing tribunal construes testimony most favorable to defendant on appeal from judgment on directed verdict for plaintiff.**

On appeal from judgment on a directed verdict for plaintiff, reviewing tribunal is required to construe testimony most favorably to defendant.

4. **Estoppel ⊚⇛119—Whether plaintiff clothed agent with indicia of ownership of piano, thereby estopping plaintiff from asserting ownership against defendant, held for jury.**

In suit to recover piano sold defendant by alleged agent of plaintiff, whether plaintiff clothed agent with indicia of ownership or with an agency to deal with and sell piano as his own property, thereby estopping plaintiff from asserting his onership, *held* for jury.

5. **Principal and agent ⊚⇛124(3)—Whether defendant warranted in paying alleged agent of plaintiff for piano, held for jury.**

In action to recover piano sold defendant by alleged agent of plaintiff, whether defendant was warranted in paying agent for piano without further knowledge or inquiry on defendant's part *held* for jury.

---

⊚⇛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Replevin ☞72—Evidence held insufficient to warrant finding that piano sold defendant was worth $250.**

In suit to recover possession of piano sold defendant, and in the alternative for its value, evidence *held* insufficient to warrant finding that piano was worth $250.

**7. Names ☞10—Failure to comply with assumed name law held immaterial, where not bearing on substantial rights of parties.**

That plaintiff suing for possession of piano, sold to defendant by alleged agent of plaintiff, had not complied with Acts 37th Leg. (1921), c. 73 (Vernon's Ann. Civ. St. Supp. 1922, arts. 5950½–5950½d), requiring persons conducting business under an assumed name to file with county clerk a certificate showing parties conducting the business, *held* immaterial, where failure to comply with statute had no bearing upon substantial rights of parties.

Appeal from Navarro County Court; A. P. Mays, Judge.

Action by J. T. Newsom against Holland Gregory. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Callicutt, Upchurch & Howell, of Corsicana, for appellant.

Davis, Jester & Tarver, of Corsicana, for appellee.

McCLENDON, C. J. Suit by J. T. Newsom, doing business under the trade-name of Southwestern Music Company, against Holland Y. Gregory, to recover a piano or its value. Trial by jury. Judgment for plaintiff for $250, the amount sued for, and costs upon a directed verdict. Defendant has appealed.

The controlling question in the case is whether there was any issuable fact which would support a verdict in defendant's favor.

Plaintiff was engaged in the piano business in Corsicana. Defendant resided near Streetman. On December 14, 1923, plaintiff shipped the piano from Corsicana to Streetman under an open bill of lading, in which Miss Flora Parker was named as consignor and J. G. Madison consignee. Shipment was made for the purpose of placing the piano in the home of defendant as a prospective purchaser. It was taken by Madison from the railway agent at Streetman and delivered at defendant's residence. Defendant purchased it from Madison as owner for $278, under the representation by Madison that he owned it.

Plaintiff testified, in substance, as follows: He knew of defendant and had probably met him, and knew that he was a reputable citizen of Streetman, and had had business dealings with some of his relatives, having sold one or two pianos to them. He first met Madison about December 10 or 11, 1923, when Madison called at his place of business in Corsicana and purchased a used piano for $225, of which $25 was cash, and the balance represented by eight notes of $25 each, secured by a lien on the piano. This piano was shipped by plaintiff to Madison at Streetman. Madison represented to him that he was engaged in the oil business. He next saw Madison December 14th, early in the morning, at his place of business in Corsicana, at which time Madison made a second payment of $25 on the piano he had purchased, and told plaintiff that, if he would send another piano to Streetman, he was confident he could sell it to defendant. The roads were bad, and the piano could not be shipped by truck, so it was hurriedly boxed, sent to the depot that morning, and shipped as above stated. Madison stated that defendant wanted to try out the piano for a few days, asked that it be shipped to himself, and that he would deliver it to the Gregorys, representing in this regard that he had a crew of men who would make the delivery without charge to plaintiff. There was no explanation of the cause for making the consignor Miss Flora Parker, other than that there was a woman of that name in plaintiff's employ. Late that evening Madison phoned plaintiff, advising that the piano had arrived, but that the stool was broken, and wanted another sent down, that Gregory seemed well pleased with the piano, and that he (Madison) "would be up Sunday afternoon, and would be in the store early Monday morning and see him." Madison did not come, and on Monday evening plaintiff telephoned defendant's wife; the substance of the conversation being that he asked her how she liked the piano, and she replied that she liked it very well. He told her that he could not come on that day, but that he would be down the next day and close the deal, if they wanted the piano, to which she replied that that was all right. This was substantially all that was said. He testified to the following telephone conversation with her the next day:

"Mrs. Gregory called me, and I answered the phone. She asked me if we had shipped that piano down there, and I told her, 'Yes,' and I asked her why, and she said, 'Well, this man Madison delivered the piano to them, and they paid him for it.' I told her we had shipped it, and expected to come down on Monday to close the deal. She said that he represented that it was his piano, and he had gotten it from his house in Dallas, that he said they had a house here in Corsicana and also one in Dallas, and that he did not have the kind of piano here she wanted and he would have to go to Dallas and get it, and that he did get it from the Dallas house, but it had to come here to Corsicana to be shipped down here. She said that they paid him for it, but that she spoke to Mr. Gregory and told him that there was something wrong about it. She said that the Southwestern Music Company's name was on the box, and called Mr. Gregory's attention to it. I told her that I would be down as soon as I could get there. I asked her to call Mr. Madison, but

she told me that he had left Streetman on Sunday. That was about the sum and substance of the conversation I had with Mrs. Gregory over the phone. Mrs. Gregory said they would be up here the next day."

He testified that he gave Madison no authority to sell the piano, but that the arrangement simply was that Madison was to deliver it to the house of defendant, and, if he liked it, plaintiff would go down to Streetman and close the transaction.

On cross-examination, he testified:

"I told Mr. Madison that I was willing to take $250 for the piano, and I was willing that he should have anything over $250 the piano might sell for."

The evidence shows that Madison was a stranger in Streetman; that he had come there a short time before the transaction in question, representing himself to be a piano tuner and dealer in used pianos. He talked to a number of people in the community with a view of selling them used pianos. He bought a piano about December 10th from plaintiff, which he sold to a Mr. McKissack, a neighbor of defendant, for $285. This piano was taken direct from the depot where it had been shipped to the McKissacks. Mrs. Gregory saw this piano at the McKissack home and wanted a similar one, and in this way she came in contact with Madison, who represented to her that he could get her a piano in Dallas. He left Streetman and returned in a very short time, stating that he had failed to get the piano he wanted, but had arranged for another one which would be shipped from Dallas to Corsicana in a through car, and there reconsigned by local freight over the T. & B. V. to Streetman. This conversation was on Friday, December 14th. The piano in fact arrived at Streetman that evening, and was delivered on Saturday morning about 9 o'clock at defendant's residence, under the direction of Madison, by a local drayman, who was paid $5 by Madison for his services. When the piano was delivered at defendant's residence, defendant and his wife wanted a little time to try it out. This Madison allowed them, and that afternoon about 2 o'clock defendant gave Madison his check for $278 on a local bank, which check was promptly cashed by Madison. A written receipt or bill of sale for the piano was given by Madison to defendant. Both defendant and his wife testified that the box in which the piano was shipped bore two shipping tags, each of which showed that it was shipped from Miss Flora Parker at Corsicana, and that there was nothing on the box or the piano to indicate that plaintiff had any connection with it whatever.

There is a sharp conflict in the testimony of the plaintiff on one hand and defendant and wife on the other with reference to conversations over the telephone and a conversation in Corsicana between plaintiff on the one hand and defendant and his wife on the other, which occurred on Friday, December 21, 1923. Mrs. Gregory testified that she never had any telephone conversation with plaintiff, and that the first information she or her husband had regarding plaintiff's connection with the piano was about 9 o'clock Wednesday evening, December 19, 1923, when plaintiff called defendant over the telephone. According to defendant and his wife, this was the only telephone conversation between plaintiff and defendant or his wife. Defendant detailed this conversation as follows:

"The first time I learned anything about Mr. Newsom with reference to this piano was when he phoned me on Wednesday, the 19th of December. That was the first I knew of Mr. Newsom. He told me he was Mr. Newsom of the Southwestern Music Company, and asked me how I liked the piano, and I told him I liked it all right. He asked me then what I thought about Mr. Madison, and I said, 'I think he is all right as far as I know.' I said, 'What do you think of him?' and he said, 'I think he is a fine man; I like him all right.' That's about all that was said."

The records of the Streetman telephone office disclosed the following calls: Three from Madison to Newsom, one each on December 8th, December 14th, and December 15th; one from Newsom to Gregory at 8:49 p. m. December 19th. There were no calls between plaintiff and defendant or his wife on December 17th or 18th; and those enumerated were all the records showed between any of the parties.

Mrs. Gregory testified that she and her husband met plaintiff on the street in Corsicana on the morning of December 21st, at which time plaintiff stated that he did not tell Madison to sell the piano, and that Madison had telephoned him between 7 and 8 o'clock Saturday evening "that we had paid him for the piano, and that he would be there Sunday or Monday to settle with him."

Defendant's version of plaintiff's statement on this occasion regarding his conversation with Madison is as follows:

"He (plaintiff) did not say whether he (Madison) told him that I had paid for it or not; said that he told him that it would be all right that we might have a week to try it. He further said that Mr. Madison told him that he would be up the next day to settle with him."

There were a number of minor conflicts in the testimony that are not necessary to note.

[1] The general principles of law which govern the case are well settled, and may be briefly stated as follows: The mere intrusting of personal property to another, either as agent, bailee, or otherwise, is not sufficient to warrant the assumption that the party in possession is the owner or has authority to dispose of the property; and, where the property is turned over to an agent, one dealing with him is ordinarily charged with the duty of ascertaining the extent of his author-

ity. These principles are well recognized in this state and generally throughout the country. The following authorities may be cited: Case v. Jennings, 17 Tex. 662; Hamilton v. Palmer (Tex. Civ. App.) 265 S. W. 240; Gose v. Brooks (Tex. Civ. App.) 229 S. W. 979; Thomas v. Hawthorne (Tex. Civ. App.) 245 S. W. 966; 2 C. J. p. 594, § 230; 21 C. J. pp. 1176–1179, §§ 180 and 181.

[2] On the other hand, where the owner of property holds out another as owner or agent, or allows him to appear as such owner or agent, with full power of disposition, he is estopped to deny the ownership or agency of the party in possession as against an innocent third party, who has dealt with the latter upon the faith of the apparent ownership or agency. Heath v. Stoddard, 91 Me. 499, 40 A. 547; Smith v. Clews, 105 N. Y. 283, 11 N. E. 632, 59 Am. Rep. 502; Rosser v. Darden, 82 Ga. 219, 7 S. E. 919, 14 Am. St. Rep. 152; Carter v. Rowley, 59 Cal. App. 486, 211 P. 267; 21 C. J. p. 1172, § 177, and pages 1176–1179, §§ 180 and 181; 2 C. J. p. 444, § 42, page 460, § 68, page 594, § 230.

This latter principle is well recognized in Texas and in other jurisdictions, but we have only cited the above cases for the reason that they come nearer in their facts than any of the other cases we have found in applying the principle to the case at bar. The Maine case is practically on all fours with the instant case. There the plaintiff intrusted a piano to one Spencer, who was a piano dealer, for the purpose of placing it in the residence of defendant, to be left there for sale, but with no authority in Spencer to make the sale. The defendant purchased the piano from Spencer, paying the full price asked, under the belief that it was Spencer's property. The court held that the facts presented a jury case. We quote from the opinion:

"Whatever may have been the private arrangement between the plaintiff and Spencer, or the limit of authority given by the plaintiff, would not a jury have been warranted in coming to the conclusion that the purchaser was justified in believing, in view of all these facts, that Spencer had authority to sell, and that the plaintiff knowingly placed Spencer in a position where he could assume this apparent authority to the injury of the defendant? We think that a jury might have properly come to such a conclusion."

This case has been often cited with approval in other jurisdictions. Whatever minor differences there may be between the facts in that case and those at bar, they do not call for a difference in holding.

[3] Viewing the testimony most favorably to the defendant, which is the attitude we must take in determining whether a fact case is presented, it may be briefly stated as follows: The plaintiff, a piano dealer, shipped a piano to an utter stranger, under bill of lading which did not indicate that plaintiff had any connection with the property. Pur-

posely, or not, plaintiff's ownership or connection with the piano was thereby concealed. The purpose of the shipment was its sale to defendant for not less than $250, Madison to receive all above that amount. He knew that defendant was reputable and responsible. He did not communicate with defendant or make any inquiry regarding Madison. Defendant, to whom Madison was also a stranger, believed that Madison was in the business of selling used pianos as he had made another sale to a neighbor, and had been trying to make sales to other parties in the community. The piano was delivered at his house by Madison, who represented himself as the owner, and, when so delivered, it shows that it was shipped to Madison by a party by the name of Miss Parker, at Corsicana.

[4, 5] We think, under the circumstances, a jury would be warranted in drawing the inference that Newsom clothed Madison with the indicia of ownership, or with an agency to deal with and sell the piano as his own property, and in concluding therefrom that Newsom was estopped from asserting his ownership. This issue, we think, should be submitted to the jury, along with the issue whether, under the circumstances, defendant was warranted in paying Madison for the piano without further knowledge or inquiry on his part.

[6] Defendant also contends, and we think correctly so, that there was no evidence which would warrant a finding that the piano was worth $250. We gather from the testimony that this was a used piano. There was no evidence whatever of its value, either market or intrinsic, further than what inference thereof might be drawn from the fact that the plaintiff was willing to sell the piano and the stool (which latter was broken and never replaced) for $250 net, and defendant paid Madison $278 for it. These facts do not in and of themselves establish value, although they would be admissible were the evidence of value conflicting. The suit is not upon contract, but is for the possession of property which plaintiff claims to own, and in the alternative for its value.

[7] Defendant also contends that plaintiff is not entitled to maintain the suit because he has not complied with chapter 73 of the Laws of 1921 (Vernon's 1922 Supp. tit. 94½), commonly referred to as the Assumed Name Law, which requires persons conducting business under an assumed name to file with the county clerk a certificate showing the parties conducting the business. The question thus presented is foreclosed by the recent decision of the Commission of Appeals in the case of Paragon Oil Syndicate v. Rhoades Drilling Co., 277 S. W. 1036, in which the holding was to the effect that this statute cannot be invoked to defeat a civil action asserted by the party violating its terms, unless it be shown that the party against whom the cause of ac-

tion is asserted has suffered some detriment by virtue of failure to comply with the statute. There is no suggestion in the present case that failure to comply with the statute had any bearing at all upon the substantial rights of the parties.

For the errors pointed out, the judgment of the trial court is reversed, and the cause remanded to that court for a new trial.

Reversed and remanded.