## USE OF AN AUTOMOBILE WITHOUT LEAVE NOT "THEFT, ROBBERY OR PILFERAGE."

Superior Court of Cincinnati.

WILLIAM D. HENDERSON *v.* THE LIVERPOOL & LONDON and GLOBE INSURANCE COMPANY, LIMITED.*

*Indemnity Insurance—Against Theft, Robbery or Pilferage—Does Not Cover Damages to an Automobile Taken and Used Without Leave.*

Wrongful use of an automobile without intent to deprive the owner permanently of its use, does not constitute "theft, robbery or pilferage" within the meaning of an insurance policy indemnifying the owner against damage by reason thereof.

*No appeal taken.

*Buchwalter, Headley & Smith,* for plaintiff.
*DeCamp & Sutphin* and *Leo J. Brumleve,* for defendant.

MARX, J.

The only question to be determined in this case is whether the automobile owned by the plaintiff was damaged as the result of "theft, robbery or pilferage." The case is submitted to the court upon an agreed statement of fact from which it appears that the automobile owned by the plaintiff was insured by the defendant under what is known as a "valued fire, theft and transportation" form policy in the amount of $1,600 upon payment of an annual premium of $43.20.

The perils insured against included, to quote the language of the policy, "theft, robbery or pilferage, excepting by any person or persons in the assured's household or in the assured's service or employment, whether the theft, robbery or pilferage occur during the hours of such service or employment or not, and excepting also the wrongful conversion or secretion by a mortgagor or vendee in possession under mortgage, conditional sale or lease agreement, and excepting in any case other than in case of total loss of automobile described herein, the theft, robbery or pilferage of tools and repair equipment."

The plaintiff kept his automobile at a public garage and the employees of the garage had no right to use his auto-

mobile for any purpose except to carry the plaintiff or to take the automobile back to the garage. On the evening of June 22, 1917, the automobile of the plaintiff was returned to the garage and the employees of the garage had no further right to use or operate his automobile that evening. However, one of the employees of the garage, under orders of the foreman of the garage, used the automobile to take the foreman of the garage and his brother a short distance to a street car from which point the driver of the automobile was ordered to return it to the garage. On the way to the street car the automobile came into collision with a street car with the result that the plaintiff was damaged in the sum of $525.

It is specifically agreed in the statement of fact that the only purpose for which the automobile was used was to take the foreman of the garage and his brother to the street car, from which point the automobile was to be returned to the garage. It is also agreed that the plaintiff did not know of or consent to such use of his automobile.

The question of law is whether such use of the plaintiff's automobile was a "theft, robbery or pilferage." Counsel upon both sides agree that under the law of Ohio as it stood prior to the enactment of Section 12619 of the Ohio General Code, such facts would not constitute either a "theft, robbery or pilferage." However, the plaintiff contends that the enactment of Section 12619 has changed the law with respect to theft, robbery or pilferage in this state to such an extent as to bring the facts recited in the agreed statement within the meaning of these words as used in this policy of insurance. This precise question has not been decided by any Ohio court and for this reason has been given most careful study and consideration.

Under the law as it stood prior to the passage of Section 12619, the use of an automobile under the circumstances of this case was not among the crimes specified in the policy for the reason that an unlawful taking with the intent to steal was absolutely necessary to constitute theft, or larceny. Counsel agree that pilferage is merely petty larceny. In *Porter*

v. *State*, 28 Ohio Court of Appeals, 410, Judge Sayre states the universal rule when he says "two essential elements of larceny are trespass, or asportation by trespass, and the intent to steal and these must be simultaneous."

In cases like the one presented here it was impossible to secure a conviction under the theft or larceny statutes of this state, and the practice of using other people's automobiles without their consent was being indulged in with such impunity that the Legislature enacted Section 12619 in order to cover these cases, familiarly known as "joy-riding." This section provides that "Whoever purposely takes, drives or operates or purposely causes to be taken, driven or operated upon the public road, highway or other public place, any motor vehicle without the consent of the owner thereof, if the value of such motor vehicle is thirty-five dollars or more, be imprisoned in the penitentiary, etc."

Under this statute there can be no doubt that a new crime was provided for by a punitive statute, and that the employees who took the automobile of the plaintiff without his consent were guilty of this crime and if convicted were subject to imprisonment in the penitentiary or fine. It does not follow that they were guilty of theft or larceny. These crimes are likewise created by statute and are well recognized and defined by laws which have not been changed in any respect by Section 12619.

Chapter 4 of the Ohio General Code relates to offenses pertaining to property and classifies these offenses under five headings—"Arson," "Burglary," "Theft," Embezzlement" and "Malicious and Other Injuries." Burglary relates to an unlawful breaking or entering into premises. Theft is defined in Section 12447 as follows: "Whoever steals anything of value is guilty of larceny, etc." Section 12448, as amended in 107 Ohio Laws, page 558, is the section which specifically covers the theft of an automobile and provides, "Whoever steals an * * * automobile, motorcycle or other motor vehicle of any value shall be * * * imprisoned, etc." Robbery is classified as an offense against the person and is defined in Section 12432—"Whoever, by force or violence or

by putting in fear, steals and takes from the person of another anything of value is guilty of robbery." Each of the above statutory crimes require an intent to steal before the crime can be said to have been committed. These are the crimes which are clearly intended by the use of the words "theft, robbery or pilferage" in the insurance contract under consideration. These are words which have a technical meaning and it is a familiar rule of construction of contracts that technical words are to be given their technical meaning.

While in no sense conclusive, the fact that Section 12619 was not placed under the chapter heading of theft or robbery is not without weight in determining the intention of the Legislature. It is not even included among the great number of "Malicious or Other Injuries" in which no specific intent is required, such as removing township posts, destroying trees, posting bills, violating cemetery rules, trespassing on state lands, removing dirt from canals, etc. Section 12619 is placed under the heading of motor vehicles, under which heading a vast variety of new crimes are being annually created. The act amending Section 12619 itself creates quite a few crimes in addition to taking, driving or operating an automobile without the owner's consent, 103 Ohio Laws, p. 524.

Section 12619-2 provides that whoever purposely and without authority from the owner starts the motor of any automobile or shifts or changes the starting devices or gears of a standing automobile or cuts or scratches the body of any other part of the machine, or drains the radiator without permission of the owner, or releases the brake upon a standing motor vehicle, shall be imprisoned for not more than three months or fined, etc.

Section 12619-1 provides that whoever either maliciously or with intent to steal or without authority from the owner removes any part of the running or steering gear, pump, or accessories, shall be imprisoned, etc.

When Senate Bill No. 113 is read in its entirety it is apparent that the Legislature did not intend thereby to provide against the theft, robbery or pilferage of automobiles by the amendment to Section 12619 but that it did intend to

make a separate and a new crime of the practice of joy-riding. In more technical language it made the use of an automobile without the consent of the owner even for the purpose of driving it around the block a crime. Such a crime cannot be denominated a theft or robbery. While the. Legislature did not name the crime, but merely described it, it might with propriety be termed a criminal trespass as distinguished from theft or larceny. The insurance policy under consideration does not include within the perils insured against damage to the automobile as the result of a trespass or a wrongful use. It is self evident that the automobile could be damaged as much by releasing the brake upon a standing machine and allowing it to roll down a hill as by driving it to the street car without the owners permission. The former is made a crime by Section 12619-2 and the latter by Section 12619. Although both may result in damage to the automobile as the result of an unlawful use or trespass neither constitute the crime of theft, larceny or robbery even giving the words their nontechnical and ordinary meaning.

The court is fortified in this construction of Section 12619 by the opinion of the Supreme Court in *State* v. *Shoemaker*, 96 O. S., 570, in which it is said at page 572—''Agreeable to an overwhelming public demand, particularly from the automobile owners, this statute was enacted in order to *cover, not the 'larcenous' taking,* but any 'wrongful' taking without the consent of the owner.''

Although this exact question is new in Ohio there is ample precedent to sustain our conclusion that the particular form of policy before the court in this case does not provide protection against damage caused by the wrongful use of the owner's car. In the same year that the Ohio act became a law and shortly after its approval by the Governor the case of the *Hartford Fire Insurance Co.* v. *Wimbish* was decided in 12 Georgia Appeals, 712. The language of the insurance policy was almost identical with that of the case at bar, providing that the defendant insured the plaintiff ''against actual loss or damage if amounting to $25, on each occasion, by theft, robbery or pilferage.'' The statute of the State of Georgia covering the wrongful use of an automobile was

almost identical with the Ohio act. Compare 103 O. L., 526 and the Georgia laws of 1910, page 93. The court said at page 714—"All these circumstances tended to negative the intent to steal which ordinarily arises from an unlawful taking. The fact that Harris was guilty of a misdemeanor of Section 9 of the 'Automobile Act of 1910' would not authorize a recovery by the plaintiff; for under that act it is a misdemeanor to use an automobile of another without his consent, even where there is no intent to steal." Concerning the proper construction of the words used in the policy the court said at page 713: "It is argued that the word theft as used in this policy means unlawful taking; that is to say, a taking without the consent of the owner. But in our law the word theft has a well defined meaning. Theft is synonymous with larceny; it is merely a popular name for larceny. This is also true in our penal code. * * * It is apparent, therefore, that the word theft should be given the same meaning as the word larceny unless there is something in the contract which requires a different construction.

"Robbery, of course, has a well defined technical meaning and and denotes a crime containing all the elements of that offense.

"The word pilferage means to steal, and to charge another with pilferage is the same thing as to charge him with stealing. Pilferage is but petty larceny. One cannot be convicted of either theft, robbery or pilferage, unless he had the intent to steal and we know of no authority for giving any different meaning to these words in a contract of insurance wherein it is stipulated that the company will be liable for the loss or damage to an automobile resulting from theft, robbery or pilferage."

The same language was presented to the Supreme Court of Florida for its construction in *Phoenix Assurance Company, Ltd.*, v. *Eppstein*, 73 Florida Reports 991. The court specifically approves of the Georgia case cited above and lays down the law in the first paragraph of the syllabus as follows:

"Where a policy of insurance indemnifies the owner of an automobile against loss or damage occasioned by theft, robbery, or pilferage, the owner cannot, under this clause of the policy,

recover for damage to a machine which had been taken by another and used without the consent of the owner, but without any intent to steal.''

In *Michigan Commercial Insurance Co.* v. *Wills,* 57 Indiana Appellate Reports 256, the court also approves of the Georgia case and says in the second paragraph of the syllabus:

''Under a policy of insurance on an automobile against loss or damage by 'theft, robbery or pilferage', plaintiff cannot recover on a finding of facts showing that his automobile was wrongfully taken for the purpose of a 'joy-ride', but not disclosing any intention to steal it, since an intent to steal is a requisite element of either a 'theft', 'robbery', or 'pilferage', and such words in an insurance policy are to be given their ordinary significance.''

In *Valley Mercantile Co.* v. *St. Paul Fire & Marine Insurance Co.,* 49 Montana Reports 430, the automobile of the plaintiff was left in a paint shop and in the absence of the owner without his knowledge or consent two employes of the paint shop took the automobile from the shop and ran it to a nearby town where an accident occurred which caused damage to the car. The testimony showed that the employes only took the car for a joy-ride without any intention of stealing it, but intended to return it to the paint shop. The court said at page 433:

''The fact that the taking was altogether wrongful and that it was the intention of Le Vasseur and Ellis to appropriate the car to their own use during the ride and to that extent to deprive the owners of the use of their property, are not sufficient to constitute their acts larceny. They must have had a criminal intent—the intention to steal the car, without which the act of taking, however reprehensible and wrongful, amounted only to a trespass or a civil wrong.''

''In *State* v. *Rechnitz,* 20 Mont. 488, 52 Pac. 264, this court adopted the very terse expression of the rule from the court of appeals of New York as follows: 'Every taking by one person of the personal property of another without his consent is not larceny; and this although it was taken without right or claim of right and for the purpose of appropriating it to the use of the taker. Superadded to this there must have been a felonious intent, for without it there was no crime. It would, in the absence of such intent, be a bare trespass,

which, however aggravated, would not be crime. It is the criminal mind and purpose going with the act which distinguishes a criminal trespass from a mere civil injury. (*McCourt* v. *People*, 64 N. Y., 583).'

"To constitute the crime of larceny, the intent which accompanies the act of taking must be the criminal intent to deprive the owner of his property, not temporarily, but permanently."

A similar case came before the Illinois Court of Appeal in *Felger* v. *Home Insurance Co. of New York*, 207 Illinois Appeals 492, and the court held "Pilferage has but one meaning and is some form of stealing. Where plaintiff's automobile was taken from his garage by someone unknown and was returned so damaged as to require repairs to various parts and some tools, held—that such damage and loss were not within the terms of the insurance policy providing against theft, robbery or pilferage.

An interesting case is *Delfield* v. *London & Lancashire Fire Insurance Co.*, 164 N. Y. Supp. 221, in which the court held that a common law larceny by trick and device, in which the plaintiff parted with the possession of his automobile, which was the result of deception, but not with his title, was not a theft within the meaning of a policy of insurance similar to the one under construction. The court said: "The term theft as used in this policy, does not include all forms of larceny recognized by law. It does not include a larceny perpetrated, as this was, under the form and guise of a business transaction conducted by the insurer himself."

In *Bigus* v. *Pacific Coast Casualty Co.*, 145 Missouri Appeal Reports 170, the court held in the syllabus: "That to create liability under the policy there must have been a felonious asportation, and as the act resulting in the loss of the machine was merely a trespass, the trial court properly directed a verdict for defendant."

In *Stuht* v. *Maryland Motor Car Insurance Co.*, 90 Washington Reports 576, an employee of a garage undertook to return the car to the owner but went considerably beyond the ordinary course in the process of taking the car to its owner and an accident occurred. It was contended that the policy covered

the wrongful taking of an automobile and that the taking need not, necessarily be a criminal taking. The court held against this contention and approved of the Georgia case above referred to.

In the case of *Smith* v. *State*, 146 Southwestern, 547 (Texas) the evidence showed that the prisoner went to the garage of the owner of an automobile and took his automobile for the purpose of riding in it. He ran it some fifty or sixty miles and injured a great many of the parts and then returned it to a street or alley near the owner's house. The court said:

"The machine was not taken with the intent by the prisoner to permanently appropriate it to his own use, nor deprive the owner of the value thereof, but it was taken solely for the purpose of using it to ride in that night and to return it only after that use and this only was done. So that the taking did not in law constitute theft, either under the terms of the statute or the uniform decisions of this court."

Similar conclusions were reached in *Rush* v. *Boston Insurance Co.*, 150 N. Y. Supp., 457, and *Siegel* v. *Union Casualty Society*, 153 N. Y. Supp., 662.

When the law is as clearly established as in this case and the language used has been so frequently interpreted the parties must be presumed to have understood the language employed to mean what the courts have declared it to mean.

Giving to this policy of insurance the most liberal construction possible in order to afford the maximum protection to the owner, the court cannot say in view of the agreed statement of fact, which specifically states that there was no intent to deprive the owner of his automobile and no intent to steal, that the Insurance Company is liable for damages upon a policy which limits its liability to theft, robbery or pilferage. In order to protect the owner in similar cases it is necessary that the policy of insurance should be so worded as to include damage as the result of the criminal use of automobiles or the use of automobiles under circumstances prohibited by law.

For this reason the court finds the issues in favor of the defendant and awards judgment accordingly.