Morris *v.* Joyce.

---

### Eliza A. Morris

*v.*

### John J. Joyce et al.

[Filed October 10th, 1902.]

1. Complainant left in the hands of her attorney J., who had charge of her investments, a bond and mortgage for $3,000 belonging to her and also an absolute assignment of the bond and mortgage, executed by her to defendant M. The execution of the assignment was procured by fraudulent representations made by J. to complainant, as was also the retention of the bond and mortgage. J. procured M. to endorse his note for $2,000 on the security of the mortgage and assignment, stating that he desired to raise a loan of $2,000 for the benefit of complainant. Complainant was not a party to the note. M. knew that J. had charge of complainant's investments.—*Held*, (1) that complainant's act in leaving the assignment and the mortgage with J. assisted in making J.'s representation to M. credible, and that she was estopped from denying J.'s agency to assign the mortgage to M., either absolutely or as collateral security; (2) the fact that complainant was not a party to the note did not, under the circumstances, give M. notice or put him upon inquiry as to the fraud in the assignment.

2. J. owned the property on which the mortgage was given, and subsequently to the endorsement by M. procured from defendants, a building and loan association, a loan of $3,200, $2,000 of which were paid by its assuming payment of the note endorsed by M. and the balance was paid to J. The loan was procured by J.'s statements that the $2,000 on the note was the entire amount due on the mortgage. The association advanced the money ($1,200) and assumed the note, relying solely on J.'s statement. They received from M. an assignment of the mortgage subject to the conditions on which he held it.—*Held*, (1) as to the $2,000 note assumed, they were assignees of M.'s rights against complainant and entitled to hold the mortgage to secure this amount; (2) as to the amount due beyond the $2,000, complainant is entitled to a decree giving her the benefit of the mortgage.

Final hearing on bill, answers, replications and proofs.

*Mr. Frank P. McDermott,* for the complainant.

*Mr. Addison Ely,* for the defendants.

EMERY, V. C.

The complainant, Mrs. Morris, was the owner of a first mortgage for $3,000 on property of the defendant Joyce, situated in Point Pleasant. The mortgage was originally given by Joyce to the defendant Murphy, from whom Joyce purchased the property in November, 1895, and was a purchase-money mortgage. Joyce was Mrs. Morris' attorney and looked after the investment of her entire funds. Mrs. Morris, before May, 1899, left the bond and mortgage with Joyce to keep with her other papers, and on May 26th, 1899, executed an assignment of the mortgage to the defendant Murphy. The consideration expressed in the assignment was $1, but the assignment contained a covenant that $3,000 were due, besides interest. As to the circumstances under which the assignment was made, the complainant says, substantially, that Joyce procured it by the statement that he wished to have the paper signed in order to make some change in her investments, and she further says that she understood it related to a $1,000 mortgage on Philadelphia property, which belonged to her and which was also in Joyce's hands. She also says that after this explanation was given by Joyce, the master, who had come to the house with him for the purpose of taking the acknowledgment, was called into the room, and the assignment was acknowledged. The master has no special recollection of the circumstances and knew nothing about the transaction, but, speaking from his general custom, says that he explained to her the nature of the instrument. On the following day Mrs. Morris, as she says, went to Mr. Joyce's office, and to her inquiry as to where he invested the money, Joyce said that he found he did not have to make the change, and that he had put the papers back with the rest of the papers. The bond and mortgage, with the assignment to Murphy, were left with the defendant Joyce.

Morris *v.* Joyce.

Joyce applied to the defendant Murphy to purchase the mortgage himself or to find a purchaser, which Murphy said he could not do. Joyce then stated that he wanted to raise some money for Mrs. Morris, and could get along with $2,000. After a consultation of Joyce and Murphy with an officer of the Manasquan Bank, it was arranged that the bank would discount Joyce's note for $2,000 if endorsed by Murphy, and Murphy agreed to endorse the note on the security of the mortgage. The note was so made and endorsed, and the bond and mortgage and the assignment were delivered to Murphy by Joyce for the purpose of securing Murphy's endorsement. The proceeds of the note were received by Joyce, who misappropriated them to his own use. Subsequently, and in November, 1899, Joyce applied to the defendants the Chosen Friends, &c., a loan association, for a loan of $3,200 upon the property. The written application, signed by Joyce, stated there was a $3,000 mortgage on the property and also a $1,000 second mortgage, and that the $3,200 mortgage applied for was to be a first mortgage. Joyce's verbal statement to the officers of the association was that, although the first mortgage was for $3,000 on its face, it had been liquidated and was only worth $2,000, and that the Manasquan Bank held it to secure the loan of $2,000 on a note. As to the $1,000 second mortgage, he stated that Murphy, who held this mortgage, had agreed to cancel his mortgage and take a new mortgage, subject to the loan association first mortgage of $3,000. The loan association did not have the entire $3,000 applied for on hand, and agreed with Joyce to assume the payment of the $2,000 note to the bank, which was then due, provided it could be renewed, this assumption being taken as payment of $2,000 of the mortgage, and to advance Joyce the balance of the loan, amounting, after charges due, to about $1,040.

Without, in fact, making any previous arrangement with the bank or with Murphy about taking up or renewing the note, the loan association, on November 9th, 1899, took a mortgage on the premises from Joyce and wife to secure $3,200, and paid to Joyce, on November 11th, 1899, the sum of $1,040, which he also appropriated to his own use. Murphy canceled his mortgage for $1,000, and took a new mortgage for $1,000, which was

expressly made subject to the loan association mortgage, but, in the meantime, Murphy continued to hold, as security for his endorsement, the mortgage assigned by complainant. This assignment had never been recorded, and on the record the title to the mortgage was still in complainant. The loan association had an abstract of the title, but this abstract has not been put in evidence. The advance of $1,040 by the loan association was made without any inquiries of either the bank, Murphy or complainant, and was made entirely in reliance on the statements and credit of Joyce. He was then in good standing and reputation and occupied a responsible position. The note given by Joyce to the bank was not taken up, and subsequently, and on July 12th, 1900, Murphy wrote the loan association requesting them to pay Joyce's note of $2,000, according to their arrangement made, as he understood, with Joyce. He further states that the note is secured by a mortgage prior to the loan association mortgage, and unless the note is paid the first mortgage ($2,000) will be foreclosed. The loan association then had the note renewed, they becoming endorsers on it before Murphy. Subsequently they paid the bank $1,000 on account of the note which they originally endorsed, or the renewal of it, and, upon making this payment, gave their own note to the bank for the balance remaining due, and which is still unpaid. Murphy, upon being released from obligation to the bank by the payment of the note upon which he was the endorser, assigned the mortgage to the association by a written assignment, reciting, among other things, that he held the mortgage as collateral security for Joyce's note, originally endorsed by Murphy, and which had been assumed by the association, and declaring that the assignment was made subject to the conditions on which the mortgage had been assigned to him. The complainant seeks to have the mortgage assigned to her, and for a decree for payment of the amount due on the mortgage to her. The equitable grounds upon which this claim to relief is based is that the assignment of the mortgage was procured by fraud and misrepresentation, and that neither Murphy nor the loan association claiming under him is entitled to hold the mortgage as against her.

As to the facts in the case bearing on the question of Murphy's

right to hold the mortgage to secure him for his endorsement of Joyce's note, my conclusions are—

*First.* That Murphy's endorsement of Joyce's note was made in reliance on complainant's assignment of the mortgage and its delivery to him, with the bond and mortgage, and in the belief that Joyce's application to him was for the purpose of assisting complainant in securing a loan upon the mortgage and its assignment to him.

*Second.* That the complainant, by leaving in Joyce's possession the bond and the mortgage and the assignment to Murphy, duly executed and acknowledged, assisted and made possible Joyce's deception of Murphy by his application. The assignment, as shown, was such as would probably, or naturally, have been made had an application to Murphy on behalf of complainant been its real purpose.

*Third.* That there was nothing in the circumstances of the transaction which gave Murphy notice or could reasonably put him on inquiry as to the truthfulness of Joyce's statement of the purpose of assigning the mortgage. The circumstance principally relied on is that Murphy knew that Joyce alone, and not Mrs. Morris, executed the note. But Murphy knew that Joyce was Mrs. Morris' attorney and had been for some years; Joyce's reputation was good at that time, and, in the absence of something to arouse suspicion as to his intention to misapply the money to be raised on the note, I do not think this was sufficient to put him on inquiry. There is no evidence that would justify me in concluding that Murphy had notice, actual or constructive, as to Joyce's intent to misapply the money, or that the application was not made on behalf of complainant, before he endorsed the note.

If these conclusions of fact are well founded, the law is settled that, so far as relates to the assignment to Murphy to secure his endorsement, the complainant is not entitled to relief. By her delivery of the bond, mortgage and assignment to Joyce, and allowing him to retain them, she assisted and made credible Joyce's misrepresentation to Murphy that he was applying to Murphy for a loan on behalf of complainant. By leaving with Joyce the papers which assigned the mortgage to Murphy, com-

plainant apparently, as Murphy had the right to consider on looking at them, applied to him, through Joyce, to take the assignment, either by way of purchase or as collateral, and Murphy was entitled to rely on these declarations and acts of the complainant apparently making Joyce her agent for sale or loan, and to rely on his authority to do so. Complainant having thus assisted in the misrepresentation of Joyce to Murphy, in reliance upon which Murphy endorsed the note, is estopped from now denying Joyce's agency to deliver the mortgage and assignment made to Murphy, either absolutely or as collateral. The decisions leave no doubt upon this point. *Putnam* v. *Clark, 2 Stew. Eq. 412; affirmed on appeal, 6 Stew. Eq. 338.* In this case complainants executed an assignment of a mortgage (either in blank or to their counsel) for the purpose of transfer on a sale to a third person. The sale fell through, as counsel stated, and the mortgage as well as the executed assignment were left with counsel. He subsequently assigned them as collateral for his own debt. As between subsequent *bona fide* assignees and the mortgagee the assignment was held valid.

The present case is a particular application of the general rule relating to estoppels against the denial of the existence of an agency:

"Where the owner of things in action or of chattels, has either designedly or negligently clothed a third person with the apparent title and power of disposition, and this third person transfers them to a purchaser in good faith, who relies upon the apparent power of sale they conferred, the original owner is estopped by his conduct from asserting his right of property, and the *bona fide* purchaser acquires a perfect title by estoppel." *2 Pom. Eq. Jur. § 811.* See, also, *Big. Estop. (5th ed.) 565.*

Complainant's counsel contends that the case is one arising under the laws of agency, and that the question is whether the agency authorized a pledge of the mortgage. But this is a misapprehension of the situation. There was, in fact, no agency whatever in reference to the assignment of the mortgage. The assignment, on the contrary, was, by the understanding between Mrs. Morris and Joyce, a paper *functus officio,* and to be left and kept among the complainant's papers as such. Joyce's taking the assignment to Murphy, with the bond and mortgage, was

Morris v. Joyce.

not the exercise of any powers of agency, but was the fraudulent use of an assignment executed by complainant, for the purpose of inducing Murphy to advance money or incur liability on it. Murphy having in good faith incurred liability relying on the validity of the assignment for his security, the question is not whether Joyce was, in fact, the agent of Mrs. Morris for the purpose of assigning the mortgage, and whether the powers of the agent were exceeded, but the question is has complainant, by her acts, so held Joyce out as her agent to negotiate the mortgage that she is now estopped from denying the agency? The distinction between cases of authority under the rules of law applicable to agency admitted to exist to some extent and estoppels to deny the existence of an agency which, in fact, did not exist for any purpose, is clearly stated by the text-writers. *Big. Estop. (5th ed.) 457; 2 Pom. Eq. Jur. § 811.* Murphy being entitled to protection against his liability, and being, to this extent, a *bona fide* purchaser, has, of course, the right to the full benefit of this protection, which will extend to a transfer of his right of security to the loan association, which assumed and, in part, paid his obligation on the note, relying upon the payment of the note as being a discharge of the mortgage. So far as related to Murphy's note, it became assignee of his rights, and the mortgage in its hands, as to the amount of the Murphy note, must be held valid against complainant, by reason of this assignment of Murphy's rights.

As to the balance of the mortgage, the situation of the loan association is different. In assuming that $2,000 was all that was due upon the mortgage, which, on its face, secured $3,000, and that this was due to the bank, and in paying the $1,000 additional to Joyce on this assumption, it relied solely on the statement of Joyce, and made no inquiry, either of the complainant, Murphy or the bank. Joyce was the mortgagor, complainant the mortgagee of the first mortgage, and on the record she had title to it. Murphy claimed to hold the $3,000 mortgage only as collateral for the $2,000 note, and the loan association, in relying on the mortgage for information as to the amount due on the mortgage, and to whom it was due, took its own risk. Murphy appears to have made no statement to it in reference

to the mortgage until July, 1900, several months after the payment to Joyce, when he referred to it, in a letter, as a $2,000 mortgage. The payment in November, 1899, cannot be considered as made in reliance on any statement of Murphy's. Neither was this payment to Joyce in November, 1899, due to any act or negligence of complainant, in relation to her conduct or duty toward the association, upon which the association relied in making the payment. On the contrary, it relied solely on the statement of Joyce, the mortgagor, and failed, before making the payment, to make inquiries of the complainant, the mortgagee on the record, or of Murphy, the assignee, or of the bank. Such inquiry would have disclosed that Murphy held, or claimed to hold, the mortgage of $3,000 as collateral to secure his endorsement for $2,000, and that the balance of the mortgage was certainly due to the complainant, and had not been paid. The association, having failed in its duty to make this inquiry, must be charged with notice of the facts which would have been disclosed upon the proper inquiry, and as to this payment of $1,040 to Joyce in November, 1899, the association is not a *bona fide* purchaser or assignee. Joyce continued to pay or account to complainant for the interest on the mortgage until he absconded, in July, 1900, and she did not know until after that date that the mortgage was out of Joyce's possession. The complainant was in no way bound by Joyce's representation to the association as to the amount due on the mortgage. Nor did she, by any act or conduct on which the association relied, assist in making credible Joyce's misrepresentation as to the amount due on the mortgage. Had Murphy, on being applied to before the payment, shown the absolute assignment or informed the association that he owned the mortgage absolutely, and that only $2,000 were due on it, a different situation might have arisen. But there is no reason to believe that he would have made such statement, and, on the case as it stands upon the evidence, complainant is not estopped from claiming that, after receiving the $2,000 payment which Murphy, or the association as his assignee, has made, the amount due on the mortgage is payable to her.

She is entitled to a decree for such payment.