## UNION CENTRAL LIFE INS. CO. v. WILLIAMS.

### No. 4657.

Court of Civil Appeals of Texas. Amarillo.
Nov. 16, 1936.

Rehearing Denied Dec. 14, 1936.

Reeder, Reeder & Reeder, of Amarillo, for appellant.

W. F. Nix, of Amarillo, for appellee.

MARTIN, Justice.

Appellant sued appellee for a balance alleged to be due upon a note of $3,000, secured by a trust deed upon 105 acres of land in Missouri, purchased by appellee, and payment of said note assumed in the deed to him. A sale of said land under said trust deed was alleged, and the sale price of $1,506 credited upon said note, leaving a deficiency of $2,221.60, which, together with the interest and attorneys' fees, was sued for.

Appellee answered that appellant in January, 1935, was threatening to sell said land, and appellee went from Amarillo, Tex., to Poplar Bluff, Mo., "to investigate and determine his rights and to make some disposition of the claims of the said Union Central Life Insurance Company.

"That at said time W. P. Renner was the agent and employee of the said plaintiff located in Poplar Bluff, Missouri, whose particular duty and authority for and on behalf of his principal, Union Central Life Insurance Company, was to look after large land holdings of the said plaintiff in said locality, to arrange foreclosure sales under its deeds of trust and to make collections for said plaintiff and do each and every act incident to the management and handling of the plaintiff's business concerning the particular land described in plaintiff's petition as well as all other lands in said locality. That in all the matters hereinafter set out the said W. P. Renner was acting as the agent of the plaintiff within his authority as such agent, doing what he was employed by said plaintiff to do and was in the course of his employment as such agent of said company.

"That upon arriving in Poplar Bluff, Missouri, this defendant sent his son, D. O.

Williams, to discuss and to settle with the plaintiff through its agent, W. P. Renner, the debt against the lands described in plaintiff's petition. That thereupon W. P. Renner, acting as agent as hereinafter set forth, did state to said D. O. Williams.

" 'That he go tell his Daddy not to worry, there is no danger of the plaintiff suing him for any deficiency. That it was the purpose of the company to bid the land in at the cheapest price they could but that such bidding was a mere matter of form and it did not make any difference what the land sold for, that it was the desire of the company to hold the sheriff's commission down as much as they could in said sale. That he should go tell his Daddy not to worry that the plaintiff was not going to sue him.' "

His petition then proceeds to make allegations that he did not bid at said sale; that appellant was enabled to buy said land cheaply; that it was worth $7,500; and that but for said fraud and wrong would have brought sufficient to pay his debt in full. He finally alleged: "Plaintiff would further show, your Honor, that if he, the said W. P. Renner, was not in fact the. agent of the said Union Central Life Insurance Company, acting within his authority as such agent in all of the above and foregoing transactions set out, that nevertheless he was an employee of said company and clothed by said plaintiff with the apparent and ostensible authority to do and to say each and every act and word that he did do and say, and that this defendant did believe, by reason of said ostensible authority and apparent authority that the said W. P. Renner was the agent of said company, acting within his authority as such, and, therefore, the said plaintiff ought, in equity and good conscience, to be estopped to assert that the said W. P. Renner was not acting within his authority, and of this your defendant prays judgment of the Court."

■ To this answer appellant urged a general and numerous special exceptions, all overruled. His second assignment of error is as follows: "The court erred in overruling and not sustaining plaintiff's special exceptions to defendant's first amended original answer. (Paragraphs II to X, Plaintiff's First Amended Motion for New Trial, Tr. 65.)"

The assignment is multifarious and will. not be considered.

"Accordingly an assignment that the court erred in overruling demurrers or special exceptions, where there were several of such demurrers and exceptions, or an assignment that the court erred in overruling a general demurrer and special exceptions, where there were several special exceptions, is not entitled to consideration." 3 Tex.Jur. p. 858.

It is claimed in substance that a general demurrer should have been sustained because no facts are alleged in said answer. showing either express, implied, or apparent authority in Renner as agent to make . the aforesaid contract or any representations respecting such matter that would bind appellant, and that at most only conclusions are pleaded.

One of the most recent expressions on this subject is found in 3 C. J. S., Agency, p. 244, and is as follows: "It is necessary and sufficient, in an action by a third person to charge the principal with liability for the act of his agent, either to plead the act as that of the principal, without averring or disclosing the agency, or to allege that it was authorized or ratified by him. To withstand a general demurrer, · the pleading need not allege the particular manner in which authority to act as agent was conferred."

Again, in 2 Tex.Jur. pp. 634, 635: "One who relies upon an agent being authorized, whether expressly or impliedly, should plead the facts relating thereto; but a general allegation of agency is usually sufficient on general demurrer. * * * Where fraud of the agent is alleged, the plaintiff must make averments connecting the agent with the principal; it is not sufficient to allege that the agent made the misrepresentations; the petition must show that the ·agent was acting in a representative capacity. It is sufficient to allege generally the authority of the agent; it is not necessary to go further and allege probative facts by which plaintiff expects to establish such authority."

See, also, Lewis v. Alexander, 51 Tex. 578; Beckham v. Clayton (Tex.Civ.App.) 262 S.W. 840; Bergere v. Parker (Tex. Civ.App.) 170 S.W. 808; Fite v. Thweatt, 46 Ga.App. 82, 166 S.E. 682; 21 C.J. p. 142, § 145(b); 19 R.C.L. p. 670, § 485.

Under this particular record, and without giving indorsement to the rule quoted above in all cases regardless of their facts, we

hold here that appellee's answer as against a general demurrer was sufficient.

A general view of the case may be had from the following special issues, all answered favorably to appellee:

"Do you find, from the preponderance of the evidence, that W. P. Renner stated to D. O. Williams that the plaintiff would not take a deficiency judgment against the defendant, W. S. Williams, if the plaintiff got the land in question at the sale thereof to be held on January 21, 1935?

"Do you find, from the preponderance of the evidence, that W. P. Renner, in making such statement, if he did make it, made same for the purpose of keeping the defendant from bidding on the land in question at the sale thereof on January 21, 1935?

"Do you find, from the preponderance of the evidence, that the defendant would have bid for said land a price sufficiently high to have paid the indebtedness held by the plaintiff, had such statement, if any, not been made by said Renner?

"Do you find, from the preponderance of the evidence, that the defendant was financially able, at the time of the sale of the land in question, on January 21, 1935, to pay at said sale, in cash, the amount of the indebtedness then owing to the plaintiff?

"Do you find, from the preponderance of the evidence, that W. P. Renner had actual authority from the plaintiff to make such statement, if it was made?

"Do you find, from the preponderance of the evidence, that W. P. Renner had the apparent authority to make such statement, if he did so make it?"

It is next contended that a peremptory instruction should have been given for appellant because there was no evidence introduced by appellee to sustain his allegations of authority or that any contract was made as alleged, and certain statements of Renner were uncontradicted. The latter part of the above we consider and dispose of hereafter.

█ Here, as usual in cases of this character, we have had great difficulty in determining the sufficiency of evidence to prove the precise authority of an agent, the exact nature of which is hidden in the minds of the principal and his agent. In this case it stayed hidden, so far as they were concerned. Even Renner on the witness stand was not questioned by appellant about the precise character of his work for appellant. He went no further than to deny pointblank his authority to make the representations alleged. Not one word of evidence as to his authority came from his principal, and no more than a denial of Renner's authority came from any witness.

"Usually the force of evidence, though slight, is greatly increased by the failure of the opposite party to rebut it, where it is obvious that the means are readily accessible to him." 17 Tex.Jur. p. 306.

The evidence is perhaps rather meager to show Renner's authority. Appellant, a corporation, could only act through an agent. In this matter a considerable controversy existed between the parties. Appellee wrote appellant letters and received in part the following replies:

"Your letter of July 13, addressed to our Treasurer, Mr. H. L. Hodell, at Cincinnati, Ohio, has had the personal attention of Mr. Hodell, and has been referred to this office for further attention.

"We have carefully noted the contents of your letter and beg to advise that we are referring same to the attention of our field representative Mr. W. P. Renner, who services the loans in Butler County, and who will give this case attention at his earliest convenience."

"Our Mr. Renner has also endeavored to work this matter out through Mr. Martin Kerstring, Poplar Bluff, Missouri, who seems to be looking after your interests in this farm. However, we have been unable to accomplish anything through Mr. Kerstring."

Appellee went from Amarillo to Poplar Bluff, Mo., to try to effect a settlement. There his son, who conducted the negotiations for him, met and discussed the matter of a deficiency judgment with Mr. Renner, who was in charge of the trustee's sale about to take place. During these negotiations Renner communicated with his principal at Kansas City. He testified in part:

"Q. You were working right under the direct authority from your company in all your dealings with D. O. Williams, weren't you? A. I was working with the company, yes sir.

"Q. And doing what they told you to do? A. Yes, sir."

Mr. Fields testified in part:

"Q. Mr. Fields, did you buy that land in at that auction sale up there? A. Yes, sir.

"Q. You were over there bidding. Who told you to bid? A. Mr. Renner.

"Q. Who is Mr. Renner? A. He is the field man for The Union Central Life Insurance Company.

"Q. He told you how much to bid? A. Yes sir.

"Q. He always tells you how much to bid in their stuff at, doesn't he? A. This is the only one I ever bought.

"Q. He always tells you what to sell their land for? A. There is a limit. He always gives the limit, I suppose. He did in this case."

Regarding the representations made by Renner, which is the basis of appellee's defense, D. O. Williams, appellant's son, testified in part:

"Q. D. O., what was the nature of your talk with Renner? A. I tried to get my father's paper back, and pay whatever it took to be paid. Mr. Renner said there wasn't any danger of a deficiency judgment being taken; that they wouldn't take it when they got the land back.

"Q. What, if anything, did Renner say about bidding at the sale? A. He said he never knew of but two cases where they had taken judgment, and that was where the men had bid at the sale and bid the land for less than the amount of the indebtedness.

"Q. Now, D. O., after having this talk with Renner, did you talk to anyone else? A. Yes, sir, I talked to my father.

"Q. What did you tell your father? A. I told him just what Mr. Renner said.

"Q. What did your father do then? A. Well, he said there was no use to go over there; that we would go home."

It further appears that appellee would have attended the sale and made the land bring his debt but for Renner's assurance above quoted.

■ We think the evidence is sufficient to support the jury's finding of apparent authority in Renner, and of the numerous issues presenting the defense of estoppel. We do not deem it necessary to pass on whether or not a valid contract was either made or authorized. It is sufficient if appellant's course of dealing was such as to make it reasonably appear to appellee that Renner was authorized to act for it, and that he did in fact, as in this case, mislead appellee to his injury.

"The apparent authority of the agent is the same, and is based upon the same elements, as the authority created by the estoppel of the principal to deny the agent's authority; that is to say, the two are correlative, inasmuch as the principal is estopped to deny the authority of the agent because he has permitted the appearance of authority in the agent, thereby justifying the third party in relying upon the same as though it were the authority actually conferred upon the agent. This has been the view of practically all the cases on the point. Accordingly, stating the rule as one of estoppel, where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has authority to perform a particular act and deals with the agent upon that assumption, the principal is estopped as against such third person from denying the agent's authority; he will not be permitted to prove that the agent's authority was, in fact, less extensive than that with which he apparently was clothed. This rule is based upon the principle that where one of two innocent parties must suffer from the wrongful act of another, the loss should fall upon the one who, by his conduct, created the circumstances which enabled the third party to perpetrate the wrong and cause the loss." 2 Am.Jur., Agency, pp. 86, 87, 88.

"Despite its not being a part of 'actual' authority, in the technical sense in which that expression is used, as to third persons dealing with the agent in good faith without notice or knowledge of private instructions or of the limited scope of the actual authority, the agent's apparent powers are his real powers." 2 C.J.S., Agency, p. 1208.

"An agent who has been clothed by his principal with apparent authority over the subject matter is as legally empowered to bind the principal as if he had been invested with actual authority. Cox, Inc. v. Humble Oil & Refining Co. (Tex.Com. App.) 16 S.W.(2d) 285, 286, reversing (Tex.Civ.App.) 7 S.W.(2d) 163." 2 C.J.S., Agency, p. 1209.

■ We are of the opinion that the pleading and proof in this case sufficiently, but

meagerly, support appellee's defense of estoppel.

Two special issues were requested by appellants and refused. The nature of both is illustrated by a reproduction here of one of these: "Do you find from the preponderance of the evidence that in the conversation between D. O. Williams and W. P. Renner, he, W. P. Renner, stated to D. O. Williams that he, Renner, did not know what the plaintiff company would do about suing for deficiency judgment?"

Renner testified to the above-quoted statement after D. O. Williams had given his evidence, a portion of which we quoted above. Williams did not again testify and categorically deny such. Appellant contends that same was therefore proven conclusively, and required a peremptory instruction, but, if not, same should have been submitted as an issue. The effect of D. O. Williams' testimony as a whole was to contradict such testimony. In addition, the Renner testimony came from an interested witness. For either and both reasons, the court properly refused a peremptory instruction based upon same. The charge tendered presented only an evidentiary, not an ultimate, issue, and was properly refused. Under this record an answer thereto would have settled nothing.

Judgment affirmed.