**DENISON PEANUT CO. v. McCRAW'S, Inc.**

No. 12675.

Court of Civil Appeals of Texas. Dallas.

April 8, 1939.

500

D. Haden Linebaugh, of Muskogee, Okl., and R. W. Stoddard, of Denison, for appellant.

Young, Blakeley & Cooper, of Dallas, and Gullett & Gullett, of Denison, for appellee.

YOUNG, Justice.

McCraw's, Inc., as plaintiff below, sued the Denison Peanut Company for certain processing taxes alleged to have been paid to and retained by said defendant, under the 1933 Agricultural Adjustment Act, 48 Stat. 31, 7 U.S.C.A. § 601 et seq., a Federal statute, which was, in January, 1936, declared unconstitutional. United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. Two issues were submitted to and answered affirmatively by the jury, viz.: "One: Do you find from a preponderance of the testimony that the Denison Peanut Company, through its manager, George Morgan collected a processing tax of one and a half cents per pound on all sales of peanuts to the plaintiff, the McCraw Candy Company after September 11th 1935 and up to January 1st, 1936. Two: Do you find from a preponderance of the testimony that George Morgan, Manager of the Denison Peanut Company on or about July 1st, 1935 or shortly thereafter, agreed with B. O. Baker of the McCraw Candy Company to refund all processing taxes collected by them on all purchases of all peanuts in the event said processing tax law was declared unconstitutional by the courts of the country.".

Upon above findings and what the court deemed undisputed evidence, judgment was rendered against defendant for $1,562.93 "being one and one-half cents per pound processing tax collected on 104,195 pounds of peanuts purchased by plaintiff from the defendant from September 11, 1935 to January 1, 1936 the period of time involved in this litigation". Defendant's basic contentions on this appeal, evidenced in assignments and appropriate propositions, are these: "(1) That the contract alleged in plaintiff's petition, and the existence of which was submitted as a jury issue, was not the contract proven by the evidence;

(2) That the contract was made before the defendant's incorporation, and there was not any showing that the defendant, appellant here, had assumed it; and (3) that appellant's agent Morgan had no actual authority to make the agreement in question, and his apparent authority could not form the basis of recovery for want of pleadings thereon."

Plaintiff had long engaged in manufacture and sale of confections and other foodstuffs, the principal ingredient of which were peanuts; and defendant operated a mill for cleaning, drying and processing peanuts suitable for use in plaintiff's business. Defendant's predecessor in the ownership of its plant, was the Barnhart Mercantile Company, the physical properties of the latter concern having been purchased by a Mr. J. T. Griffin, and incorporated as the Denison Peanut Company the latter part of July, 1935. Mr. George O. Morgan, named in the above issues, had managed the former company, selling the commodity involved herein to plaintiff, and then became vice-president and general manager of defendant Corporation. The evidence on which the jury's answers were based came wholly from said Morgan and B. O. Baker, agent of plaintiff. It is here stated:

(Baker) "He (Morgan) told me if I would continue to buy my peanuts from the Denison Peanut Company as I had from the Barnhart Mercantile Company he would assure me the same kind of treatment that I had always gotten from Barnhart and if there was any taxes refunded he would see that we got our refund."

(Morgan) "Mr. Baker asked me what the policy of the new company was going to be with reference to handling his business, and I assured him that we would want him in the future just as we had in the past * * * and he asked about the processing tax and what we were going to do in the event the Act was declared unconstitutional * * * I told him we would refund if and when the processing tax was refunded."

Further testimony from Mr. Baker was that he then continued to buy peanuts and pay defendant one and one-half cents per pound processing tax. This was corroborated by Morgan, who further stated that the payment of such processing taxes to the Federal Government was handled through his office and under his supervi-

sion; that such taxes collected by defendant from customers after August, 1935, were retained by defendant and not paid over to the Federal Government; the above conversations taking place a few days after Mr. Griffin took over the business in the first half of July, 1935. Without further quoting from the record, we conclude the issues presented in the court's charge contained the fact elements of the agreement as alleged by plaintiff—both harmonizing with and supported by the testimony before the jury. Appellant contends that the contract plead by appellee differed materially from that proven, because Mr. Morgan testified to a condition precedent in this particular: that "the refund was to be made if any such refund was made to anyone". However, appellant failed to request an issue as to whether the agreement was so conditioned, or to object to the court's charge by reason of the alleged error. The points complained of cannot be now raised.

■■■ But, appellant says the agreement involving the refund was made prior to its existence, with no showing of an after assumption by the Corporation, citing Weatherford, etc., Ry. Co. v. Granger, 86 Tex. 350, 24 S.W. 795, 40 Am.St.Rep. 837. This case, however, is not analogous, dealing with services (of a promoter) rendered and fully completed before the Railway's incorporation. The present facts are dissimilar in that, Mr. Morgan was in no sense a promoter, and the benefits accruing to plaintiff were received by defendant after its incorporation—arising out of full performance by plaintiff of its part of the previous agreement. Certainly Morgan was vice-president and general manager of the corporation after August 1, 1935, with no self-interest in an agreement which continued through the material dates of the latter's management for defendant. "* * * the acts of a duly authorized agent within the scope of his authority bind the principal, and carry to him, constructively, notice of all material facts comprised in the transaction." Goldstein v. Union National Bank, 109 Tex. 555, 213 S.W. 584, 587. And the Granger case, supra, further states the rule here applicable [86 Tex. 350, 24 S.W. 797]: "Having exercised rights and enjoyed benefits secured to it by the terms of a contract made by its promoters in its behalf, a corporation should be held estopped to deny its validity. Again, where the promoters of a corporation have made a contract in its behalf, to be performed after it is organized, it may be deemed a continuing offer on part of the other party to the agreement, unless withdrawn by him, and may be accepted and adopted by the corporation after such organization; and the exercise of any right inconsistent with the nonexistence of such contract ought to be deemed conclusive evidence of such adoption."

■■■ Lastly, Mr. Morgan's connection with the defendant fully authorized him, as a matter of law, to continue plaintiff's agreement or contract in force—the same being within the ordinary course of affairs with which he had been entrusted as manager. 10 Tex.Jur., Corporations, Sec. 325, p. 981; Continental Supply Co. v. Forrest E. Gilmore Co. of Texas, Tex.Civ. App., 55 S.W.2d 622; Robertson v. Langford Inv. Co., Tex.Civ.App., 60 S.W.2d 1079. He (Morgan) had general supervision of the business, including payment of processing taxes. Defendant's president and principal stockholder, J. T. Griffin, had given him permission to make refund agreements with other companies. While it is true that Mr. Griffin instructed defendant's manager to submit the names from time to time of the customers with which such refund agreements were made, and plaintiff's name was not included; and that a limitation was thus sought to be thrown around Morgan's authority in this respect, yet, plaintiff received no notice that the agreement in suit was not to be recognized by defendant unless plaintiff's name appeared on the "preferred" list. Third parties unaffected by knowledge or notice of secret or private instructions or limitations between principal and agent, are not bound by them. 2 Corpus Juris Sec., Agency, § 95, p. 1202.

We conclude the jury's findings, and further evidence which can be considered as undisputed, fully sustain plaintiff's judgment. Appellant's assignments are accordingly overruled and this cause is affirmed.

Affirmed.