BRISSAUD *v.* ROGERS.

4-9376                                        236 S. W. 2d 439

Opinion delivered February 12, 1951.

*John W. Cloer,* for appellant.

*Eli Leflar,* for appellee.

PAUL WARD, J.   The parties hereto entered into a contract on January 11, 1950, whereby appellee was to sell and appellant was to buy a farm for $3,450.   Due to difficulties arising over the title and acceptability of the land, Rogers sued Brissaud for specific performance in the Chancery Court and secured a decree from which appellant, Brissaud appeals.

O. P. Rogers owned 160 acres of land and on above date he listed it for sale with J. P. Pettey, a real estate broker in Springdale, representing that there was a well 900 feet from the house, a running creek and spring, 60 acres of tillable land, 100 acres of pasture and timber land, and that the land would carry a loan of $2,000. Brissaud, having been licensed as a real estate agent a few days previously, was in the office and heard the above listing. He asked appellee to take him out to the farm, a distance of about 12 miles, and show him the place.   This was done and appellant spent some thirty minutes looking over the buildings, but did not go over the place because he had on his "good clothes."   On the return trip appellant expressed a desire to buy the farm

and after getting appellee to reduce his first offer, they agreed on the price of $3,450 and upon arriving at Pettey's office entered into the following contract.

## "OFFER AND ACCEPTANCE

"Springdale, Ark., Jan. 11, 1950.

"To J. P. Pettey, Agent

"You are hereby authorized to offer for my account the sum of thirty-four hundred fifty dollars for the following described property. The northeast quarter of the northeast quarter and the southeast quarter of the northeast quarter and the northeast quarter of the southeast quarter of Sec. 24, Twp. 17 N., Range 29 west, and the northwest quarter of the southwest quarter of Sec. 19, Twp. 17, R. 28 west containing 160 acres more or less. This amount is to be paid in the following manner:

"Cash or trade as per statement below......$...........
"Loan to be assumed or placed for my
    account.
"Cash ................................................................$ 100
"Balance payable ........................................$3,350
"When deed and abstract are delivered
    to the buyer and title is acceptable........$...........
      "Total................................................................$3,450

## "TRADE OR OTHER SPECIAL CONDITIONS

"Buyer to pay the commission and the 1949 taxes. Buyer to have title examined and if good payable as above, time to close said deal 15 days from date.

## "GENERAL CONDITIONS

"It is understood that the seller shall furnish "abstract of title continued to date showing merchantable title, or policies of title insurance, pay all taxes now due or delinquent; and make conveyance to me by warranty deed, date of which shall fix time for dating of notes and adjustment of rents, interest and insurance. Possession given when title is accepted.

"Attached hereto is check for $100 as earnest money which shall apply as part of purchase price if this offer is accepted within .......... days from date; otherwise to be returned to me. If for any reason I fail to carry out my part of this agreement said earnest money is to be forfeited as liquidated damages.

"Receipt of earnest money as stated above is hereby acknowledged.

"Signature /s/ Francis Brissaud

"Address R. No. 6, Fayetteville, Ark.

"J. P. Pettey, Agent.

"THE ABOVE OFFER IS HEREBY ACCEPTED this 11th day of Jan., 1950.

"/s/ O. P. Rogers,

708 S. 7 St., Rogers, Ark.

Owners."

On February 5 appellant went out to look at the land again and found out, he says, that the land was not as represented; that there were only about 20 acres in cultivation, that the creek and spring were dry except after a rain and the well was more than 900 feet from the house. The next day appellant had Pettey to call Rogers to his office and when he arrived he was told appellant wanted to forfeit the $100 as the land was not as represented, and thereupon Pettey gave Rogers a check for $90 retaining $10 for work on the abstract. Rogers took the check but came back within an hour and returned it to Pettey stating that Brissaud "had bought himself a farm."

The testimony shows there were not 60 acres in cultivation, but appellee contends that "tillable" land does not necessarily mean land in cultivation. The evidence is in dispute as to how much "tillable" land there was, but there was some evidence that there was as much as 60 acres. There is evidence showing the well to be 990 feet from the house, but appellee says he told Brissaud on the first trip, it was about three blocks.

Also there is a conflict as to the creek and spring, but some testimony that they had been dry only once in several years. We deem it not necessary to set out more fully the testimony because we think the finding of the lower court was not against the preponderance on these points. It must be remembered also that appellant had an opportunity to view the farm before he agreed to buy and it cannot be said he relied entirely on the representations made by Rogers.

Brissaud also defended on the ground that the title was not good. His attorney in a written opinion, pointed out certain defects, but we think appellant at the close of the testimony waived such defects as may have existed. When the court called appellant's attention to a confirmation decree in the abstract of title the following procedure took place.

The Court: "There's a confirmation decree in the abstract."

Mr. Cloer: "No, there isn't."

The Court: "Yes there is."

Mr. Leflar: "In February, 1948."

Mr. Cloer: "Let's see. Well, I don't know. I didn't know that was in there; but we are relying on misrepresentations."

It is insisted that appellee agreed to a recision and also is estopped from recovering because he took the $90. We are unable to find merit in this contention. The check was returned within an hour and appellant testified that he was not hurt or damaged in any way, which removed the chief element of estoppel. Moreover appellant waived any rights he might have had when some twenty days later he demanded the $100 be returned to him.

The final question to be decided, that of "liquidated damages," is a very interesting one and calls for a careful investigation of the authorities. Under the terms of the offer and acceptance agreement set out above does Brissaud have the right to discharge all obligations im-

posed on him by forfeiting the $100 or does Rogers have the right to have the contract performed in its entirety? Surprisingly this question has never, so far as our investigation discloses, been directly passed upon by this court. The nearest approach has been *Parks* v. *Johnston,* 188 Ark. 711, 67 S. W. 2d 583 in 1934, which sustained specific performance. This, however, cannot be considered more than persuasive because the contract out of which the question arose was as noted in the "statement of facts" . . . "started orally and carried on by telephone and in writing" and nowhere is the specific wording set out. In this connection the court said: "It was a contract of sale and purchase, not an option to buy . . ." which appears to be the reasoning followed in the courts of other states which hold that a mere "liquidated damages" clause does not prevent specific performance. There is an informative case note in the spring 1950 Ark. Law Review, Vol. 4, p. 237, which cites numerous cases and concludes in harmony with the weight of authorities, that, "if the contract states merely that upon breach thereof a certain sum of money will be paid by the defaulting party as liquidated damages . . . it will be construed as agreements for performance of the respective obligations. . . ." An exhaustive note in 98 A. L. R. at page 888 is to the same effect and appears to be in accord with the weight of authority. The reasoning is based on the intention of the parties expressed in the contract, but it is also stated that before specific performance is denied it must appear affirmatively that the intention was otherwise. This is because the primary object of a sales contract is deemed to be performance.

We are in accord with the holdings and reasons set out above and when applied to the contract in this case hold with the learned Chancellor that Rogers was entitled to have specific performance.

Affirmed.