MOORE *v*. MARKS.

5-639                                    278 S. W. 2d 659

Opinion delivered May 9, 1955.

*Heartsill Ragon* and *C. Randolph Warner, Jr.,* for appellant.

*Gean & Gean,* for appellee.

GEORGE ROSE SMITH, J.   This is a suit by the appellee, A. M. Marks, for specific performance of a contract by which he agreed to purchase certain real property from the appellants, Mr. and Mrs. Hoyt B. Moore.   The negotiations leading up to the contract were conducted through a real estate dealer, Harward Barry.   The pivotal question, upon which the validity of the contract depends, is whether Barry was acting as agent for the buyer or as agent for the sellers.   The chancellor found that Barry was representing the sellers, and upon that finding the court granted the prayer for specific performance.

In August of 1954 the Moores attempted to sell this property themselves by advertising it in a Fort Smith newspaper.   Barry saw the advertisement and called on

Moore, for whom he had previously bought and sold property. Barry testifies that he was employed by Moore and that his commission was discussed and agreed upon. It cannot be said that Moore denies this testimony; to the contrary, he pretty well admits it. These are excerpts from Moore's testimony:

"Q. Did you put the property in his hands to sell?

"A. Yes, sir, we had talked it over.

\* \* \* \* \*

"Q. Did you authorize, or employ, Harward Barry to sell your property . . . ?

"A. (Pauses) Well, at that time I did."

Barry testified that after his employment by Moore he approached Marks as a prospective purchaser; Barry states positively that he had no agreement with Marks for the payment of any commission. It is not clear how long Barry negotiated with Marks, but on the afternoon of Friday, September 3, Marks orally made to Barry a tentative offer of $13,500, which was slightly less than the Moores had been asking. That evening Barry discussed this offer with the Moores, and they signed the contract now in issue, by which they agreed to sell the property at Marks's figure. Upon leaving the Moores that evening Barry took the signed contract to Marks and left it with him. The contract provided that it should be void unless earnest money were put up by noon on the following Tuesday.

On the next day, Saturday, September 4, the Moores received a better offer for the property. Hoyt Moore promptly telephoned Barry, but the exact effect of their conversation is in dispute. Moore says that when Barry told him that the contract had been left with Marks, he informed Barry that the deal was off and directed Barry to pick up the contract before Marks signed it. Barry says that he did not understand Moore's position to have been this clear-cut, but in the view we take the result is the same even if Moore's directions were as positive as he says.

On the following Monday, September 6, Marks signed the contract and delivered it, together with the earnest money, to Barry. If Barry had really been told to drop the matter he violated his instructions, for he accepted the contract and the earnest money. The Moores' subsequent refusal to perform the agreement led to this litigation.

In our opinion the fact that Barry was the agent of the Moores is practically undisputed. We have summarized the oral evidence, which consists of Barry's positive assertions that he was employed by Moore and of Moore's reluctant admissions that these assertions are true. In contending that Barry was not their agent the Moores rely almost entirely upon the terms of the contract of sale, which they think to show conclusively that Barry was the agent of Marks. In all material respects this contract is the identical printed form that was quoted in full in *Brissaud* v. *Rogers*, 218 Ark. 369, 236 S. W. 2d 439. The printed form is entitled Offer and Acceptance. By the form the buyer purports to authorize the named real estate agent "to offer for my account" a certain sum for the property, all the conditions of the contract being stated in the offer. After the buyer's signature spaces are provided for the agent to acknowledge receipt of the earnest money and for the seller to accept the offer. Here it happened that the Moores first signed the acceptance, on Friday, and Marks completed the execution of the contract on the succeeding Monday.

We think it plain that the language of this printed form did not convert Barry's agency for the sellers into an incompatible and disloyal attempt on his part to represent the buyer. The form is evidently designed for use in transactions in which a real estate dealer acts as an intermediary between the parties. Its purpose is not to declare the existence of an agency but merely to reduce to writing a firm offer that may be submitted by either party to the other. Here it was the Moores who made the written offer, by filling in the contract and

signing in the space provided for the seller's acceptance. Marks completed the contract by accepting that offer.

Once it is decided that Barry was the agent of the Moores, the case involves only simple and familiar rules of law. From the point of view of Marks, who appears to have acted in good faith all along, it can hardly be doubted that a binding contract came into existence. On Friday night Marks received from the sellers' agent a signed offer, which was subject to acceptance by noon of the next Tuesday. Without notice of the sellers' change of mind Marks accepted the offer within the time allowed and delivered his check for the earnest money to the agent. Marks had manifestly done all that was required of him.

Upon the undisputed facts it is clear that the Moores' effort to withdraw their offer was ineffective. One dealing with an admitted agent, even though he be a special agent, is entitled to assume that the agent is clothed with authority coextensive with its apparent scope and is not bound by the principal's specific instructions of which the third person has no notice. *Three States Lbr. Co.* v. *Moore,* 132 Ark. 371, 201 S. W. 508; *Slayden* v. *Augusta Cooperage Co.,* 163 Ark. 638, 260 S. W. 741. Two other more specific rules are also applicable. One is that if the principal knows that the agent has begun to deal with a third person, the agent's apparent authority cannot be terminated unless the third person has notice of the termination. Rest., Agency, § 129. The other is that similar notice of termination is required when the principal has entrusted to the agent a writing which manifests the agent's authority and which is meant to be shown to third persons. *Ibid.,* § 130. Here Hoyt Moore admits that he knew Barry was negotiating with a man named Marks, and the Moores entrusted Barry with a signed copy of the proposed contract. In these circumstances Barry's apparent authority to consummate the sale could not be withdrawn without notice having been brought home to Marks.

A minor contention is that Marks was required to pay the entire purchase price of $13,500, rather than just the earnest money, by noon on Tuesday, September 7. It is shown that when the printed form was filled out and signed by the Moores on Friday evening, the amount of the purchase price was inserted, but the spaces for the earnest money and for the remaining balance that was to be paid on delivery of the deed were left blank. The contract, however, clearly contemplated a deposit of earnest money, as it provided that this deposit had to be made by noon, September 7. It was patently intended that Barry and the buyer would fix the amount of the earnest money and insert this detail in the agreement. As completed, the contract requires that the entire unpaid balance be paid upon the delivery of the deed, which is all that the sellers are entitled to demand.

Affirmed.

MILLWEE, J., dissents. SEAMSTER, C. J., not participating.