George PROWSE, Appellant,

v.

J. F. WHITEHURST et al., Appellees.

No. 13230.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 4, 1957.

Motion for Rehearing Granted in Part
Jan. 29, 1958.

On Second Motions for Rehearing
April 2, 1958.

Further Rehearings Denied April 16, 1958,
and May 14, 1958.

Fred C. Reeder, Corpus Christi, for appellant.

Lewright, Dyer & Redford, J. R. Sorrell, Corpus Christi, for appellees.

POPE, Justice.

Plaintiff, George Prowse, sued J. F. Whitehurst and wife and their agent, F. F. Quaile, for damages for the breach of a contract by which plaintiff was to purchase the Whitehurst residence. After a trial by a jury both sides moved for a judgment on the verdict, and the trial court rendered judgment for the defendants. Plaintiff, the purchaser, has appealed on four points. The first three points are that the court erred in admitting certain testimony, and the other point is that the court erred in refusing to render judgment on the verdict for the plaintiff purchaser. By deciding the last point, the others become immaterial.

Mr. and Mrs. Whitehurst, vendors, owned a house and lot in Corpus Christi which they listed for sale for cash with their agent, F. F. Quaile. Purchaser and Quaile negotiated for some time concerning the purchase of the house, and on June 22, 1955, purchaser had his attorney prepare a written sales contract which stated that purchaser would buy the house for $24,500, $6,500 in cash, with the balance payable in installments over a period of twenty years. This constituted an offer to buy. Purchaser executed and delivered this written contract, together with an earnest money check for $1,225, to Quaile, vendors' agent. On June 24th, Quaile took the contract to his principals, the vendors, who were preparing to leave the city. They hastily signed the contract and returned it to Quaile with express instructions not to deliver the contract unless it was changed to provide that the sale must be for all cash. Quaile took the fully executed contract and the earnest money check to the office of the escrow agent, Nueces Abstract and Title Company. He testified that he placed the papers on the side of the desk of one of the officers of that firm and then telephoned Prowse concerning the matter. What happened in the office during and after that phone conversation was in much dispute.

The jury found, in answer to the special issues, that Quaile told purchaser that vendors had signed the contract and that it had been delivered to the escrow agent. They found that purchaser believed and relied upon the statement, and that but for such belief purchaser would not have borrowed $6,500 from a bank with which to make the down payment. These were findings that the vendors had estopped themselves from denying the validity of the contract. The jury also found that the agent actually delivered the contract to the escrow agent. They found that purchaser's damages would be $3,600. The jury also found that the agent, Quaile, interfered with the vendors' performance, that Quaile caused the nonperformance by vendors, that the interference was with intent to commit fraud on purchaser, and that purchaser was entitled to exemplary damages against Quaile in the amount of $4,000. Purchaser urges that these findings entitle him to a judgment instead of the defendants.

However, the jury also found that vendors signed the contract upon condition that it would be changed to provide for all cash, and that the agent, Quaile, did not have apparent authority to waive that condition. There was no finding that purchaser knew about the private instruction that the vendor gave his agent. As stated, the jury found that Quaile actually delivered the contract. Vendors urge that there is no evidence of delivery. The issues in the case, therefore, resolve themselves into two matters: (1) Was there a dispute in the facts about the delivery of the contract by agent Quaile to the escrow agent? (2) If so, does the finding that the contract was executed by vendors upon condition that it would be changed to provide for payment of all cash prevail over the findings that the vendors are estopped to deny the valid delivery of their executed contract?

Vendors' first argument is that the judgment which denied purchaser's claim should be upheld because there was no evidence to support the finding of delivery by agent Quaile without which delivery there could be no contract under any theory. The facts were sharply disputed, and the inferences from the dispute raised a question of fact. Agent Quaile denied a delivery. He testified that after vendors signed the contract, he went to the office of the escrow agent and laid the instrument on the side of the desk of a Mr. John Sparks, Vice-President of the escrow agent company. He said nothing to Mr. Sparks about the contract. He testified that he talked to purchaser by telephone and told him that the trade was not acceptable and must be for all cash, which purchaser said he would arrange. While he was talking, and without Quaile's knowledge, Mr. Sparks signed the escrow agreement attached to the bottom of the contract, and acknowledged receipt of the earnest money check. After the phone conversation, according to Quaile, he told Mr. Sparks there was "no deal," and that he did not want the papers delivered under any circumstances unless the contract was changed to provide for all cash. The contract was never so changed. Quaile stated that he left the papers in the custody of the escrow agent. Mr. Sparks, the officer for the escrow agent, testified that Quaile left the papers on his desk but gave him no instructions until after he had signed the escrow agreement at the bottom of the contract. After Quaile concluded his conversation with the purchaser, according to Sparks, Quaile told him there was no deal. Sparks did not remember any conversation about changes in the contract. Sparks stated that Quaile told him, after the phone conversation, and after he had signed the escrow agreement, that Quaile was not delivering the contract. Three days later, Quaile picked up the contract, tore off the signatures, and returned the contract to the purchaser.

The purchaser, however, produced testimony which raised a jury issue on whether the agent in fact delivered the contract. Prowse, the purchaser, testified that during the phone conversation, Quaile said that vendors did not like the idea of installment payments over a period of twenty years. Purchaser testified that he said: " 'Fred, did they sign the contract?' He said, 'Yes'. I said, 'Have you delivered it to the title company?' He said, 'Yes'. I said, 'We have a contract or don't have? If we don't bring the check to me now.' " Purchaser was also asked if he was told in that conversation that the deal was not acceptable and he answered, "No, sir." Mrs. Prowse, the purchaser's wife, testified that on her husband's instructions she called Quaile earlier on the morning that these matters occurred, but that Quaile had not at that time talked with the vendors. Later in the day, Quaile called Mrs. Prowse and said: "Mrs. Prowse, you and George have bought yourselves a house. The Whitehursts have signed the contract, and I'll take the papers down to the title company." This evidence presented a disputed issue of fact. According to Quaile, partially supported by the officer of the escrow agent, Quaile told Prowse that there was no contract until it was changed and that the con-

tract was not delivered. According to purchaser and his wife, the agent told them they had a contract; he told purchaser's wife he was on his way to deliver the contract, and told purchaser that he had delivered it. Whether there was a delivery was a disputed issue, and the jury decided that issue in favor of the purchaser.

■ The jury further found that the agent told purchaser that it would be "satisfactory" to close the transaction on the basis of purchaser's paying the full amount of the purchase price. The contract permitted purchaser to pay all installments at any time. The jury found that Prowse was prepared and willing to do that. These findings were made in addition to those which found that the contract the purchaser submitted was executed by the vendors and delivered to the escrow agent. The most that the vendors could get out of such findings would be that they made a "grumbling" acceptance, but nevertheless an acceptance. 1 Corbin on Contracts, Sec. 84.

Purchaser's other point is that the court should have rendered judgment on the verdict for him, rather than for the vendors. The jury found that the vendors gave their agent express instruction not to deliver their executed contract until it was changed to provide for payment of all cash. As stated above, the agent violated that instruction and condition to delivery, and in fact made delivery. The question, therefore, is whether the vendors, as principals, are liable in damages to the purchaser, when the agent for the principals violated his instruction by making the delivery of the executed contract. The jury found not only that the agent actually delivered the contract, but also that he told the purchaser that the vendors had signed the contract and that he had delivered it. The jury found that purchaser relied upon the statement and borrowed money on the strength of such statement. In other words, there was an estoppel which the jury found in favor of the purchaser. The jury found

that the agent violated his actual instructions in making delivery, when his actual authority prohibited delivery of the executed contract until changes were made in the body of the instrument. Yet the jury also found that the agent's conduct in violating his principals' authority and instructions amounted to an agency by estoppel.

When the purchaser sent the contract to the vendor after he, the purchaser, had executed it, there was an offer to the vendors. The next information that the purchaser had concerning his offer was that vendors' agent had delivered the contract, executed by the vendors, to the escrow agent. The jury found this as a fact.

■ Agency by estoppel is not grounded upon actual authority. It amounts to authorization even when actual authority is absent. Cox, Inc., v. Humble Oil & Refining Co., Tex.Com.App., 16 S.W.2d 285; Dewey T. Ross Engineering Corporation v. Sonneman, Tex.Civ.App., 159 S.W.2d 200; Union Central Life Ins. Co. v. Williams, Tex.Civ.App., 99 S.W.2d 319; Hamilton v. Maroney, Tex.Civ.App., 57 S.W.2d 1125; Gregory v. Newsom, Tex.Civ.App., 279 S.W. 912; 2 Am.Jr., Agency, Secs. 104, 105.

■ In Baker v. Pierce, Tex.Civ.App., 155 S.W.2d 822, the principal gave his agent an executed deed and gave him private instructions not to deliver the deed unless a certain sum was first paid. The agent, nevertheless, delivered the deed, and the principal was held bound by the agent's delivery in spite of his violation of the limits of his express actual authority. Likewise, in this case, when the principals turned over their fully executed contract to their agent, so far as the innocent third party is concerned they bestowed upon their agent the character of one who was accepting the purchaser's offer. Acts "may be within the sphere wherein an agent can impose liability on the principal although outside of the agent's authority as qualified

by private instructions." 2 C.J.S. Agency §§ 29, 95; Restatement, Agency, Sec. 31. While one may not assume to act as agent for another without authority, when the third party can trace the authority on which he relies back to some word or deed of the principal and the third party has no knowledge or notice of the limited authority, the principal may sometimes be held. Denison Peanut Co. v. McCraw's, Tex.Civ.App., 127 S.W.2d 499; Schauble v. Hedding, 138 Minn. 187, 164 N.W. 808. In Morgan v. Harper, Tex.Com.App., 236 S.W. 71, the principal left a power of attorney in the hands of his agent, and though the power was later revoked, while still in the hands of the agent, the court held that the principal would be held if the agent displayed the power to mislead the third party, and that where one of two equally innocent parties must suffer, the loss should fall upon him whose negligent act or omission enabled the wrongdoer to do the harm. Accord, Parma v. First Nat. Bank of Cameron, Tex.Com.App., 63 S.W.2d 692; Lloyds Casualty Insurer v. Farrar, Tex. Civ.App., 167 S.W.2d 221, 227; Blackmon v. Apple, Tex.Civ.App., 112 S.W.2d 1057; Morris v. Joyce, 63 N.J.Eq. 549, 53 A. 139. The rule has been applied most frequently in the case of executed bonds. Ballow v. Wichita County, 74 Tex. 339, 12 S.W. 48; Marsh v. Phillips, Tex.Civ.App., 144 S.W. 1160. In the instant case the purchaser sent his executed contract to the vendors who executed the contract and turned it over to their agent. The principals entrusted their agent with a signed contract, and the purchaser without notice of any limits on the power to deliver, could act upon the agent's apparent authority to consummate the sale. Analogous situations resulted in agencies by estoppel in Moore v. Marks, 225 Ark. 10, 278 S.W.2d 659, and Wittlin v. Giacalone, 84 U.S.App.D.C. 140, 171 F.2d 447; 12 C.J.S. Brokers § 132.

Both the purchaser and the vendors insist that they should have judgment. The jury found that the vendors, by their act of executing the contract and placing it in their agent's hands, are estopped to deny his authority to make delivery, because of secret or private instructions by the principals. The jury also found that the agent did not have apparent authority from vendors to waive the condition. While no point raises the matter, at first these issues seem to conflict, since apparent agency is based upon an estoppel. 2 C.J.S. Agency § 29. The finding with reference to apparent agency was not that the agent had no apparent authority to deliver, but that he had no apparent authority to waive the condition. An examination of the record shows us that the vendors did and said nothing which would indicate to purchaser or any other person that the agent could waive conditions imposed by the vendors. The important point is that the purchaser did not know about any conditions or private instruction, at least until after the delivery which the jury found was made. Baker v. Pierce, supra. The findings that the vendors are estopped by their act of delivering the executed contract to their agent control the case. There are no points attacking the damages which the jury found that purchaser sustained, and the case is accordingly reversed and judgment rendered that plaintiff recover the sum of $3,500 damages against vendors, and the sum of $4,000 against the agent.

Judgment reversed and rendered for plaintiff.

### On Motions for Rehearing.

The second motion for rehearing by F. F. Quaile complains that we rendered judgment against him for exemplary damages in the absence of findings which support actual damages against him. The jury found that Quaile interfered with the performance of the contract, and that finding has support in the evidence. The jury found also that the market value of the property on June 24, 1955, was $28,000. The contract price was $24,500. Since the measure of damages for tortious interference with the contract is the same as

the measure of damages for breach of contract, the judgment should be and is rendered jointly and severally against Quaile as well as the Whitehursts for actual damages in the amount of $3,500, and for exemplary damages against Quaile for $4,000. Raymond v. Yarrington, 96 Tex. 443, 72 S.W. 580, 73 S.W. 800, 62 L.R.A. 962; American Surety Co. v. Shaw, Tex.Com.App., 69 S.W. 2d 47, 52; Day v. Hunnicutt, Tex.Civ.App., 160 S.W. 134.

The second motion for rehearing of F. F. Quaile and the third motion of the Whitehursts are overruled.